## McQUEEN v. TREMONT LUMBER CO.
### No. 4670.

Court of Appeal of Louisiana, Second Circuit.

Jan. 3, 1934.

while in the scope of his employment and not realizing the condition of said injury he continued his work and again in June 1931, he again became ruptured on the left side, although he endeavored to perform his duty to the best of his ability and knowledge."

This is followed by an allegation that at no time did defendant's physician inform him that his injury was of such serious nature as to militate against his performing his regular work duties, and for this reason he continued to labor for defendant; and, following these allegations, plaintiff avers that on or about September 16, 1931, defendant informed him that his services could be availed of no longer because its physician had discovered that he "was ruptured on both sides." He finally alleges, in paragraph VII, that "said accident arose out of, and that said injury was incidental to," his employment by and with defendant. He claims to be totally and permanently disabled to perform manual labor, such only as he has performed for twenty-eight years, and that the ruptures have "decreased his earning capacity."

Defendant's answer is a general denial, coupled with a special averment that plaintiff, while in its employ, never received any injuries that resulted in a rupture or any other kind of injury; and, further, that when plaintiff was "let out" on September 16, 1931, he was working five days a week, eight hours per day, at 67½ cents per hour.

When the case was called for trial, defendant filed an exception of no cause and no right of action. The record does not disclose that the exception was in any manner acted on by the court. Defendant objected to the introduction of any evidence in the case, and reserved all of its rights under the exception. The record shows that all the evidence in the case was admitted subject to the objection. In this court the exception is urged and briefed. The case was tried on the merits; considerable evidence was adduced; plaintiff's suit was dismissed and his demands rejected. He has prosecuted this appeal.

As a rule, an exceptor, by not insisting upon a ruling by the court on his exception, waives his rights thereunder, but in the present case exceptor protected itself against being placed in such a predicament by objecting to the introduction or reception of any evidence to support plaintiff's case. If no cause of action was disclosed by the petition, necessarily there was no issue before the court, and, over objection, a cause of action could not be eked out by admission of evidence which, without objection thereto, would have had the effect of enlarging the pleadings to the extent of disclosing a cause of action.

The petition says that plaintiff was ruptured on the right side in 1919, but does not say that he was in defendant's employ at

T. A. Carter and Wade Broussard, both of Alexandria, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover compensation for disability alleged to have resulted from and as a sequence to an accident which befell him while in the employ of defendant. The predicate of his action is found in paragraph IV of his petition, which we quote: "Petitioner shows that on or about the spring of the year of 1919 he became ruptured on the right side

that time. It says he continued to work at his regular occupation and was ruptured on the left side in June, 1931. It is not affirmatively alleged that he was then in defendant's employ. He does not set up the facts and circumstances of either rupture, nor that there was an accident to him which caused the ruptures. The exact part or parts of the body involved in or affected by the ruptures is not disclosed, beyond general references to left side and right side. It is true it is alleged that "said accident" arose out of plaintiff's employment with defendant, but these allegations are merely conclusions that there was an accident, as defined by section 38 of the Workmen's Compensation Act (as amended by Act No. 38 of 1918), and that, when it occurred, plaintiff was discharging duties arising out of and within the scope of his engagement with defendant. Where plaintiff was at the time, and what he was doing when injured in 1931, as well as in 1919, are not set out by the petition. The facts necessary to base such conclusions upon are absent. All ruptures to which the human body is subject do not necessarily depend upon an accident for their existence, and all ruptures which a workman may experience do not necessarily arise out of and in the course of his employment. The exception would be well founded if the suit were not for compensation. In such cases the technical rules of evidence and procedure are materially relaxed (subsection 2 of section 18, Act No. 20 of 1914, as amended by Act No. 85 of 1926); and, as held in Pierre v. Barringer, 149 La. 71, 88 So. 691, if the general purport of the petition discloses it to be by an employee against his employer for compensation resulting from an alleged accident arising out of and in the course of petitioner's employment, that is sufficient, and a cause of action is disclosed. The act requires the judge to "decide the merits of the controversy as equitably, summarily, and simply as may be." Dewey v. Lutcher-Moore Lbr. Co., 151 La. 672, 92 So. 273. If the lower court had sustained the exception of no cause of action or had excluded the testimony objected to, the case would have been dismissed as of nonsuit; and in either case a new suit could have been brought on the same cause of action.

■ The lower court held, after considering the testimony of both sides, that plaintiff failed to make out his case, and finally rejected his demand. That judgment, if affirmed, forecloses any future suit by plaintiff on the same cause of action.

■ We have carefully studied the evidence in the record and found ourselves in accord with the judge of the trial court on the merits of the case. The testimony leaves no doubt in our mind that plaintiff is not entitled to recover.

Plaintiff had been in the employ of defendant since 1918, excepting the last eight months of 1927. When he returned to defendant's employ in January, 1928, in compliance with the company's rule at that time, he submitted to a physical examination, and was found to be in satisfactory condition. He discharged his duties well until he was "let out" on September 16, 1931. In June, 1931, when he claims to have been injured, he was performing the duties of sawyer, which, generally speaking, required him to transfer the logs to a carriage, which was then rolled (on tracks) to the saws where the log was converted into lumber. The handling of the logs and operation of the carriage were effected by means of steam levers and other steam-controlled mechanism. Not much physical effort was required to do all this. He states that a log fell over in the track and was in such position that he had to lift it back in place, and that, when he put forth the effort to do this, the injury of which he complains happened. He says that when he picked the log up he felt something "straining and hurting * * * and it hurt me in this left leg, * * * in my stomach and groin," and that he immediately suffered pain. He did not mention the matter to any of the other employees near him, with one exception, nor did he quit work. He did not report his injury to the company's physician nor to any of its officers, as required by its rules, of which he had knowledge, and as advertised by placards posted in conspicuous places on the sawmill premises. He did, however, on the second day following the alleged injury, go to the city of Alexandria and consult Dr. Evans. Dr. Evans found him suffering from complete inguinal hernia on both sides. He prescribed wearing a truss, took measurements therefor, and fitted it on him, and for some thirty days thereafter plaintiff visited the doctor off and on to have the truss adjusted. Dr. Evans was not able to say whether the conditions he found in plaintiff were of recent origin or of long standing, but, from the history given him, thought they were of recent date.

In September, 1931, defendant, in order to weed out physically unsound men in its employ, thereby reducing its insurance hazard, required that all of its employees submit to physical examination by Dr. Scott, its own physician. When plaintiff reported for examination, he did not wear his truss and did not inform Dr. Scott of the condition which Dr. Evans reported he had found in him. Dr. Scott discovered that he had open rings in the abdominal muscles, and therefore predisposed to hernia. When advised of his finding by the doctor, plaintiff stoutly denied that he had ever been ruptured and was not satisfied, apparently, with Dr. Scott's diagnosis. Dr. Scott had been plaintiff's family physician for many years, and he and the company's manager were reluctant to dispense with his services, and in order to have the diagnosis confirmed, or negatived, if erroneous,

plaintiff was sent to Dr. Texada, at Alexandria, for additional examination. Dr. Texada found no hernia at all, but did find the external abdominal rings enlarged. He found no bulging and no mass on coughing or straining.

Drs. G. W. Smith and J. T. Cappel examined plaintiff in January, 1933, some eighteen months after the alleged accident. Dr. Cappel found him afflicted with "bi-lateral incomplete hernias on both sides, at the inguinal canals," and Dr. Smith found "existing hernia on both sides."

All the doctors agree that, if a laborer sustain a rupture of such nature as to immediately evolve into herna or hernial condition, he would be a most unusually constituted person if he could continue, without loss of any time, to perform his duties, as was done by plaintiff after June 17, 1931.

Plaintiff explains that he consulted Dr. Evans because he had more confidence in him than in Dr. Scott. It would not have cost him any amount to be examined by the defendant's own physician. His real motive for not informing Dr. Scott of his injury and for not wearing the truss when he reported for examination on September 16 is not clearly revealed. He verified his petition with his own affidavit, but as a witness denied he was ruptured in 1919, as therein alleged. Corroborative of this allegation, he told defendant's vice president and manager, after September 16, 1931, that he was injured in 1919, but had entirely recovered, insisted that he was able to do manual labor, and urged that official to give him employment. This was declined. At this time he told the manager that he had been injured while working for the company, but admits, for some unexplained reason, he did not tell him the time and place of such injury.

The conflict in the testimony of the medical experts is practically confined to the one question: Did plaintiff have hernia on September 16, 1931, or was he then only predisposed to hernia because of rings in the abdominal muscles? Of the three doctors who then examined him, two are positive there was no hernia, while one is equally certain that he had hernia on both sides. They all agree that a sudden development of hernia is followed by intense pain, and that disability to perform labor follows; that an operation is the most nearly certain specific for such trouble, though a small percentage of such operations is not successful; but wearing a well-fitted truss will bring about beneficial results, enabling the patient to perform labor not requiring heavy lifting or straining.

The record fairly well establishes that plaintiff's condition for a long time was predisposed to development of hernia, and he knew it. He knew of the company's rule that would probably cause him to lose his employment if his true condition were made known to its officers or physician; hence, his efforts to keep his condition a secret from them.

The preponderance of the medical testimony supports the contention that plaintiff had no hernia, but stronger evidence than this on the same question are plaintiff's own acts, conduct, and his proven ability to perform the duties of his employment.

It is a harsh rule which excludes from employment the servant who, for a period of many years, has proved his fidelity to duty, because, forsooth, it is known that eventually he will become disabled, from known physical defects, to carry on. Mr. Murray, defendant's vice president and general manager, explains that this rule was adopted and enforced because the Legislature of 1928 (Act No. 242) repealed the statute on hernia (subsection 1, par. (d), subd. 17, of section 8, Act No. 85 of 1926).

The judgment appealed from is affirmed.