## FAULKNER v. MILNER–FULLER, Inc., et al.

### No. 4755.

Court of Appeal of Louisiana.
Second Circuit.
May 4, 1934.

J. B. Dawkins, of Monroe, for appellant.

Hudson, Potts & Bernstein and Shotwell & Brown, all of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff sued his employer, Milner-Fuller, Incorporated, and its insurer, Hartford Accident & Indemnity Company, for compensation alleged to be due him for injuries received by him while performing the duties of his employment. He alleges that during the year 1932, and until January 6, 1933, he was employed by Milner-Fuller, Incorporated, in its garage in the city of Monroe, La., as a mechanic and painter, and that among the other duties of his employment he was required to make repairs on automobiles, and to apply lacquers and paints and other kindred solutions on them after being repaired. He also alleges that during the latter part of July, 1932, "his lungs became infected with the chemical emanations from the paints, lacquers and other thinners being used in painting cars, which necessitated his being treated by a physician, and also which work incapacitated him for several days during each week; which condition continued until he became so physically handicapped on or about the 6th day of January, 1933, that it was necessary for him to quit work entirely in order that he might receive the proper treatment.

"Now, petitioner shows that as his physical condition is due entirely to his breathing into his lungs of the chemical fumes above referred to, which caused a permanent im-

pairment that prevents him from the performance of any physical labor, which is the sole means by which he can earn a livelihood, was received during the course of his employment. * * *"

In the alternative, plaintiff sued his employer alone for a large amount, under article 2315 of the Civil Code, alleging as a cause of action that it knew, or it was its duty to know, "that the fumes from the said paints, lacquers and thinners would cause a permanent impairment or death to anyone breathing same, and that it is customary where paints, lacquers or thinners above referred to are used to provide the employee therein engaged with a gas mask or other protection to prevent said injuries, but that your petitioner did not know, until it was too late, of the injurious effects from said fumes or chemical emanations, and as his health has been permanently impaired, and as he verily believes, and for that reason avers, that his life has been by many years shortened. * * *"

Both defendants filed exceptions of no cause and no right of action. These were, in due time, argued and submitted. Before judgment was pronounced thereon, plaintiff filed a supplemental petition wherein he virtually reiterates the allegations of his petition as to his main demand, and adds that, while performing his said duties on or about August 28, 1932, at his employer's place of business, "he accidentally breathed into his lungs the chemical emanations, which seared and/or infected the lining of his lungs, throat and bronchial tubes to such an extent as to necessitate his being treated by a physician; that his injuries aforesaid were reported to his employer," and he was sent to a physician for treatment, under whose care he remained until the time the amended petition was filed.

To the averments of his original petition, respecting his alternative demand, the supplemental petition adds that it was customary and the duty of Milner-Fuller, Incorporated, when paints, lacquers, or thinners, above referred to, are used, to provide the employee therein engaged with a gas mask or other protection to prevent said injuries, but which was not furnished petitioner.

Defendants also filed exceptions of no cause and no right of action to this supplemental petition, and, under reservations, answered. All of these exceptions were sustained and plaintiff's suit dismissed at his cost. Plaintiff appealed.

Appellant has filed no brief in this court. We assume that his position and contentions are correctly reflected by the allegations of his petition and the amendment thereto.

Appellees contend that, since the original petition does not disclose a right or cause of action against defendants, and since their exception putting this question up to the court for decision had been filed, submitted, and was under the court's advisement when the amended petition was filed, when the court sustained the exceptions, the effect of its ruling related back to conditions as they existed when the exceptions were filed. They cite the case of Tuck v. Harmon, 151 So. 806, decided by this court on January 3, 1934, in support of their position. They are in error. The cited case, on the point under consideration, holds: (1) That, if an exception of no cause of action and/or no right of action is sustained, thereafter life cannot be injected into the petition by amendment; and (2) that, if erroneously overruled and the petition is thereafter amended to show a cause or right of action, the situation on appeal will be considered as of the time the exceptions were erroneously overruled, and the amendment ignored. The syllabus in the case is to some extent misleading. The present case presents different facts to that of Tuck v. Harmon. Here, issue had not been joined when the supplemental petition was filed, and, until issue is joined, a plaintiff may file almost any sort of amendment without the court's leave. A fatally defective petition may be in this manner amended so as to become vital and effective. Code Prac. art. 419; Tarver v. Quinn et al., 149 La. 368, 89 So. 216; Lehman Dry Goods Co. v. Lemoine et ux., 129 La. 382, 56 So. 324; Blakeney v. Easterwood, 3 La. App. 796; Penn v. Jones, 5 La. App. 371.

And it was held in Shipp v. Bordelon, 152 La. 795, 94 So. 399, a compensation case, that: "Since the amended petition was filed and allowed before the exception of no cause of action was passed upon, and admittedly it cured the defect in the petition, there was no error in overruling the exception."

Therefore, whether plaintiff has alleged a cause or right of action must be determined from the contents of both the original and amended petitions filed by him.

Appellees' argument in support of their exceptions is predicated entirely upon the assumption that plaintiff's amended petition is not properly before the court. They therefore direct their discussion to the weakness of, and defects in, the original petition. They say that no allegation is made that plaintiff's

injury was reported to his employer, as required by section 11 of the Workmen's Compensation Law (Act No. 20 of 1914, as amended by Act No. 247 of 1920). This omission is cured by appropriate allegations in the supplemental petition. The suit was filed within six months after the date of the alleged injury. It is also urged that the exact date of the injury is not disclosed in the original petition. This date is declared to be on or about August 28, 1932, in the supplemental petition. The most serious contention urged by appellees, and the only real issue in the compensation demand, is that the injury of which plaintiff complains did not arise from an accident, as defined by law, but is what is known as an occupational disease, which is not compensable under the laws of this state. It is true that occupational diseases, as such, have not been declared compensable in this state.

Only two cases involving facts similar to those disclosed in the present case have reached our courts, so far as a diligent search on our part discloses. These are Nowaski v. Continental Flat Glass Company, 4 La. App. 524, and Reichler, Fairley & Possoit v. Southwestern Gas & Electric Co., 9 La. App. 501, 121 So. 314. In the first of these cases the plaintiff complained of injuries resulting from inhalation of ash soda. The opinion is silent as to whether or not defendant raised the issue of compensability of plaintiff's alleged injuries. The case went against plaintiff on the merits. In the second case, the plaintiffs, who were painters, sued for compensation for injuries caused by the inhalation of poisonous fumes given off from paint, containing coal tar and creosote, which they had spread on the interior of defendant's tanks. An exception of no cause of action was filed in the lower court and referred to the merits. It was not definitely passed on. The case went against plaintiffs on the merits.

The issue turns upon whether the injury of which plaintiff complains is a result of, or sequence to, an accident within the meaning and purview of the Workmen's Compensation Law (Act No. 20 of 1914, as amended). The allegations of the petitions do not positively characterize the injury of which plaintiff complains as being one usual to or that might be expected to befall a person engaged in the painting of repaired automobiles. The amended petition rather negatives such inference. It states that on or about August 28, 1932, petitioner "accidentally breathed into his lungs the chemical emanations, which seared and/or infected the linings of his lungs, throat and bronchial tubes," etc. While it is true his duties regularly required him to apply paints and lacquers on the repaired cars, yet a fair and liberal interpretation of all of his allegations does not lead to the positive conclusion that these liquids, when properly prepared and applied, regularly and constantly gave off fumes which could and would be expected to produce the effect upon, and cause the injury and disability to, the person applying them, as plaintiff alleges befell him while thus engaged on the date named. It could happen that such results could be traceable to improper compounding of the chemical and other elements making up the liquids, so that the fumes given off would, without the knowledge of the user, be so unusually strong as to cause an unexpected and unanticipated injury or disease to him, bringing the case within the meaning of accident as defined by the Workmen's Compensation Law. It could also happen that the use of such liquids, properly or improperly prepared, in a room or inclosure with inadequate ventilation, would bring about injury or disease to the user, so suddenly and unexpectedly as to characterize the result as being an accident. It is true that the petition is meager in details, and its allegations do not clearly bring plaintiff's case within the cases above illustrated. It is also true that the allegations do not definitely negative that his case does not fall within a state of facts which would justify it being declared an accident. He was not requested to allege with more detail the facts and circumstances connected with, or bearing upon, the injury complained of.

■■ Our courts have uniformly given a liberal interpretation to the provisions of the Workmen's Compensation Law, as concerns the rules of evidence and procedure applicable to cases arising thereunder. However, this does not relieve a plaintiff from establishing his case by the same weight and degree of proof as in other civil cases.

If there be doubt of the sufficiency of the allegations of a petition to disclose a cause or right of action, such doubt should be resolved in favor of sustaining the petition rather than the exception.

In Pierre v. Barringer, 149 La. 71, 88 So. 691, the court, while considering an exception of no cause and no right of action, said: "A critical examination of the petition, which is carelessly drawn, would show that it does not technically embrace a cause of action. But its general purport shows it to be a suit

by an employee against his employer for compensation for an accident while the plaintiff was in the employ of the defendant and while he was supposed to be acting in the performance of his duties."

The exception, sustained by the lower court, was held by the Supreme Court to be not well founded, in view of the liberal construction to be given the Workmen's Compensation Law, as it relates to pleading.

In Dewey v. Lutcher-Moore Lumber Co., 151 La. 672, 674, 92 So. 273, it was virtually held that exceptions of no cause of action and no right of action are out of order in suits by workmen to recover compensation, unless it appears that the defect in the petition is substantial to the extent that, if the question be considered on the merits, it can only result in the rejection of plaintiff's demand.

We considered exceptions of no cause of action and no right of action in the recent cases of McQueen v. Tremont Lumber Company (La. App.) 151 So. 683, and Stockstill v. Sears-Roebuck & Company (La. App.) 151 So. 822, 824, and in the present case, as was said in the Stockstill Case, we say: "It is not our purpose to prejudge the case on the merits, but simply to remand it for trial so that plaintiff may have the opportunity of presenting the facts he relies on to recover."

██ We think the alternative demand of plaintiff, as amplified by the supplemental petition, does disclose a cause of action. It is alleged that defendant knew, or should have known, that the fumes given off from the paints, lacquers, etc., used in painting and embellishing repaired automobiles, were dangerous and would cause permanent injury or death to workmen inhaling same; that it was not only customary for employers to provide their employees engaged in applying said liquids with gas masks to protect them from the dangers of injuries resulting from inhaling said fumes, but that it was their duty to do so; that such gas mask or other protection from said injury was not furnished him by defendant; and that he was ignorant, until too late, of the fact that said fumes or chemical emanations when inhaled would work injury to a person, such as he has experienced. Summarizing, plaintiff charges defendant with a certain duty to him as its servant, that that duty was breached, and that, as a result of its breach, he has suffered injury for which he should be compensated in damages. Under the well-recognized doctrine that the master is bound to furnish his servant with a safe place in which to work and provide him with safe and adequate implements and appliances with which to do his work, the petitions disclose a cause of action.

For the reasons herein assigned, the judgment appealed from is annulled, reversed, and set aside, and this case is now remanded to the lower court for further proceedings according to law and the views herein expressed; cost of appeal to be paid by appellees.