## SANDERS et al. v. M. FEITEL HOUSE WRECKING CO., Inc. *
### No. 16880.

Court of Appeal of Louisiana. Orleans.
April 4, 1938.

Rehearing Refused April 18, 1938.

Herman L. Midlo, of New Orleans, for appellants.

Normann & Bethea and Harold M. Rouchell, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit brought by the sisters of a deceased workman for compensation. Hannah Goods, wife of Hardy Sanders, and Harriet Goods, the plaintiffs, in their petition, allege that Chesterfield Goods, while employed by the defendant, M. Feitel House Wrecking Company, Inc., as a laborer engaged in the demolition of a brick building, was fatally injured on October 14, 1936, by the collapse of a wall; that their deceased brother was unmarried and that they, his sisters, were solely dependent upon him at the time of his death. They pray for 43½ per cent. of the wages earned by deceased, which they allege to have been $18 per week, or $7.83 for a period of three hundred weeks plus $150 for funeral expenses. To this petition the defendant filed exceptions of no right or cause of action and vagueness. The exceptions were leveled at the failure of the plaintiffs to allege that at the time of their brother's death, the defendant, his employer, was engaged in demolishing buildings or other structures "as a trade, business or occupation," and also the failure to allege that the injury which resulted in the death of their brother arose out of and was incidental to his employment. The exception of no cause of action was maintained and plaintiffs allowed to amend. A supplemental and a second supplemental petition was filed without changing the situation in regard to the alleged deficiency of allegation. In its answer defendant, reserving the ben-

*Writ of certiorari denied May 30, 1938.

efit of its exceptions, admitted the employment of deceased on a basis of $2 per day for a five-day week, or $10 per week; challenged the legitimacy of plaintiffs and their alleged dependency upon their deceased brother.

There was judgment below in favor of defendant dismissing plaintiffs' suit and an appeal was taken to this court.

■ Counsel for plaintiffs, in his brief and in oral argument in this court, concedes that Hannah Goods Sanders is not entitled to recover conpensation as a dependent of the deceased because the record shows that she is earning a livelihood and her claim has been abandoned. Jenkins et al. v. Ætna Casualty & Surety Company et al., La.App., 158 So. 217; Dourrieu v. Board of Commissioners of Port· of New Orleans, La·.App., 158 So. 581.

The first contention urged upon us by defendant's counsel is that the omission of essential allegations from the petition is fatal to plaintiffs' claim regardless of what may be shown by the ·record because all testimony not in conformity with the alle-· gations of the petition was duly and properly objected to, and a cause of action cannot be eked out by the admission of evidence over objection of counsel. McQueen v. Tremont Lumber Company, La.App., 151 So. 683; Simon v. Duet, 177 La. 337, 148 So. 250; Cuggy v. Zeller et al., 132 La. 222, 61 So. 209; Terrell v. Terrell, La.App., 151 So. 661.

Act No. 20 of 1914, § 18, subd. 4, as amended, by Act No. 85 of 1926 (the Compensation Law), contains the following provision:

"The Judge shall not be bound by technical rules of evidence or by technical rules or procedure other than as herein provided. * * * The judge shall decide the merits of the controversy as equitably, summarily and simply as may be."

This provision, says counsel, has no application to this case because it refers exclusively to procedure and not to substantive legal rights. Benjamin v. Standard Accident Insurance Company of Detroit, 152 La. 874, 94 So. 428; Smith v. Marine Oil Company, 10 La.App. 674, 121 So. 782, and many other cases.

■■ It is true that plaintiffs in workmen's compensation cases must prove their claims by a preponderance of the evidence just as in all other cases, but they are not held to the same degree of strictness with respect to their pleadings. As we see it an exception of no cause of action addressed to insufficiency of allegation in a petition involves a question of procedure and not only of substantive law. The case of Pierre v. Barringer, 149 La. 71, 88 So. 691, is directly in point. In that case it was conceded by the court that the petition under consideration did not "technically embrace a cause of action. But," said the court, "its general purport shows it to be a suit by an employe against his employer for compensation for an accident while the plaintiff was in the employ of the defendant and while he was supposed to be acting in the performance of his duties." The court held that it was evident from a consideration of that statute "that exceptions would be out of order" in compensation cases and concluded that the exception of no cause of action filed in that case should have been overruled.

■ In a subsequent case, Wilkie v. Langlois, La.App., 164 So. 434, the court explained its ruling in Pierre v. Barringer, supra, as being applicable only to technical failures to make out a cause of action and not to matters of substance where plaintiff has failed to make out his case. In view of these authorities we believe the exception of no cause and of·no right of action, filed in the instant case, should have been overruled notwithstanding the technical failure to allege a cause of action.

Defendant contends that plaintiff has failed to allege and prove her legitimacy. In other words, that she has failed to show that she was the legitimate issue of her father and sister of the deceased employee of defendant, and finally, that there has been no showing of dependency.

■ Taking up these points in inverse order and considering first Chesterfield Goods' ability to maintain his dependent sister, we find from the record that he earned $2 per day and worked five days a week when regularly employed. His maximum income was, therefore, $10 a week. But he was not always steadily employed for according to the evidence in the record he worked from January 1st, to October 14, the day he died, a total of only eighty-one days, for which he received $162. He lived with a woman by the name of Nancy Jackson, his concubine, and maintained an establishment for their joint occupancy. He had a married son, Herbert Goods, who was not dependent

upon him who testified in the case on behalf of defendant. Herbert Goods declared that he never knew his father to contribute any money to his sisters but that he gave him between $.75 and $1.00 per week. Herbert Goods earned $14 per week and supported a wife and five children.

Nancy Jackson testified that Chesterfield Goods bought the groceries, paid the rent, and gave her money to maintain the household whenever he had it, and when asked whether she ever heard him say that he was contributing towards the support of his sisters answered that "he didn't have anything to give them and didn't worry with them."

From the foregoing it appears that Chesterfield Goods' financial condition was, to say the least, precarious, his maximum income being $10 per week and his actual earnings over nine months prior to his death amounting to approximately $4.50 per week. He had to provide food, raiment, and shelter for himself and Nancy Jackson which was in itself no mean financial undertaking in view of his slender resources. We realize that Chesterfield Goods, being an humble negro laborer, did not have many expenses common to individuals in a more exalted station, but, nevertheless, the simple matter of obtaining sufficient sustenance to keep body and soul together would appear to us to exhaust the major part of his income. If he gave his son $.75 or $1.00 per week, as his son claims he did, an additional strain would have been put upon his meagre funds. If we add $2.50 per week, which Hannah Goods Sanders, whose claim for compensation has since been abandoned, testified he gave her, and $3 per week, which Harriet Goods claims he gave her, the financial burdens of Chesterfield Goods reached Ossa-Pellian proportions and were such as to tax the ingenuity of a far greater financier than we believe Chesterfield Goods to have been. It is possible that he gave one or the other or perhaps both of his sisters an occasional donation of a small sum of money, but that he was in any sense the main stay of their support or that they could have been either wholly or partially dependent upon him in any

true sense of the word, we find impossible to believe. Our impression of the matter is that all Chesterfield Goods' earnings were devoted to the maintenance of his own menage and to the simple needs of Nancy Jackson and himself and that there was frequently insufficient funds on hand for this purpose, let alone the indulgence of generosity towards his sisters, for the record indicates that the cupboard in the Goods establishment was frequently bare.

Entertaining this view, we find it unnecessary to consider the other points raised by defendant.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.