347 So.2d 1249 (1977)
C. M. ALEXANDER, Plaintiff-Appellant,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, et al., Defendants-Appellees.
No. 11348.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied July 11, 1977.
*1250 Irving H. Koch, John P. Nelson, Jr., New Orleans, for C. M. Alexander, plaintiff-appellant.
Sharon P. Frazier, Baton Rouge, for State of La. through the Dept. of Highways, defendant-appellee.
William A. Norfolk, Baton Rouge, for O. D. Creel, defendant-appellee, and Con-Plex, Division of USI, Inc., third-party defendant-appellee.
Don L. Broussard, Lafayette, for Travelers Ins. Co., intervenor-appellee.
John B. Noland, Boris F. Navratil, Breazeale, Sachse & Wilson, Baton Rouge, for Barnard & Burk and Howard, Needles, Tammen and Bergendoff, third-party defendants-appellees.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
Plaintiff appeals from a judgment rejecting his demands for personal injuries. We affirm.
On May 26, 1971, plaintiff was operating a bulldozer equipped with a front end "rake tooth". He was in the process of clearing the right of way for Interstate Highway 12 (I-12) in Tangipahoa Parish when the dozer rake struck a submerged butane tank, causing the tank to rupture and ignite. As a result, plaintiff sustained burns to his face and forearms.
The record reflects that in 1963 the State of Louisiana through the Department of Highways (Department) entered into a contract for professional engineering services with Barnard & Burk (a partnership) in joint venture with Howard, Needles, Tammen and Bergendoff (a partnership), (hereinafter referred to as Engineers) whereby the latter were to prepare preliminary and final construction plans and specifications for the highway project. Pursuant to this contract the Engineers prepared from aerial photographs and ground surveys profile sheets of the area. These sheets were to depict all structures within the right of way. The subject butane tank was situated near a residence located on the profile sheets at Station 351 plus 65. Whereas the residence and a well were shown on various profile sheets, the presence of this submerged butane tank was not indicated.
The contract between the Department and Engineers required, inter alia, that:
"6. * * * The ENGINEERS shall show all existing utilities on the plans and transmit prints to the various utility companies for verification and for the location of any additional utilities and other required information. Copies of all correspondence with utility companies shall be furnished to the DEPARTMENT by the ENGINEERS."
* * * * * *
"7. (b) All topography located both within and in the immediate vicinity of required right of way or affected by said required right of way, such as houses, outbuildings, fences, railroads, power poles, telephone poles, wells, etc., giving measurements and descriptions of said improvement (i. e. two-story frame residence, asbestos siding, corrugated metal roof, brick piers, 21/2" well 500' deep with tank and electric driven pump)."
*1251 Following the completion of the plans and specifications prepared by the Engineers, the Department contracted with Con-Plex, a division of United States Industries, Inc. (Con-Plex) to clear the right of way. At the time of the accident the residence had been previously removed from the site.
Con-Plex rented a bulldozer with operator from a Mr. O. D. Creel.
Plaintiff named as defendants the Department, Engineers, and Creel.
Negligence against the Department is based on that agency's alleged failure to adopt proper procedure to determine the location and warn others of the presence of the submerged butane tanks.
Liability against the Engineers is sought to be imposed on their failure to locate the tank and indicate its location on the appropriate profile sheets.
Liability against Creel is sought under the theory of executive liability based on allegations that Creel was in fact a supervising employee of Con-Plex.
The trial judge rejected plaintiff's demands as to each of the above named defendants and held that plaintiff's exclusive remedy was under workmen's compensation. We are not favored with oral or written reasons for judgment. However, inherent in this ruling is a finding by the trial judge that (1) the Engineers were not negligent, and (2) Creel was neither negligent nor an employee of Con-Plex.
Apparently, plaintiff has abandoned any claim that the Department's or Con-Plex's liability in the premises is other than a principal contractor or an employer, respectively, which liability is restricted to workmen's compensation benefits. La.R.S. 23:1061.
The Department regularly undertakes as part of its trade, business or occupation, the construction of highways. This activity is specifically authorized by La.R.S. 48:21. The Department's decision to carry out this function by contracting with Con-Plex for such work brings the Department under the exclusive remedy provision of La.R.S. 23:1061. Richard v. National Surety Corporation, 99 So.2d 831, (La.App. 1st Cir. 1957), writs refused, March 17, 1958; Gray v. Louisiana Power and Light Co., 247 So.2d 137, (La.App. 4th Cir. 1971), writs refused, 259 La. 59, 249 So.2d 202 (1971).
It is conceded that plaintiff was injured while in the course and scope of his employment with Con-Plex and that plaintiff has received appropriate workmen's compensation benefits from the employer's insurer. Under these circumstances, plaintiff's remedy against Con-Plex is restricted to such benefits. La.R.S. 23:1061.
The issue as to the Engineer's liability relates directly to the duty imposed on them via their contract with the Department. Plaintiff argues, based on the language in the contract shown above, that a butane tank is a utility within the intent of the contract. The evidence does not support this contention.
The record reflects that the language in the contract (section 6. above) does not encompass individual butane tanks. It specifically refers to "various utility companies" and is designed to facilitate highway construction without disturbing previously existing utility servitudes or the disruption of utility service to unaffected residences or businesses.
With respect to Section 7.(b), above, the evidence clearly preponderates to the effect that the Engineers were not required to detect a submerged tank. Two engineers with the Department so testified. A third engineer with the Department expressed the view that he considered a tank "a part of the topography" and should have been shown. He is the only witness to so testify. The witnesses for the Engineers testified that they are not required to search out or probe for underground obstacles.
The record further reflects that numerous individuals had been in the vicinity of the old homesite and failed to observe the presence of the tank. It was not an object that was discernible by ordinary visual observation. Accordingly, we fail to find any breach of duty on the part of the Engineers.
*1252 Liability of O. D. Creel presents two problems, his employment status as it pertains to executive responsibilities and, if such is established, a determination of whether his conduct under the circumstances exposes him to liability.
Creel testified that he was not an employee of Con-Plex, that he only rented his equipment to this contractor, and his only purpose in being on the jobsite was to service his equipment. The record seems to indicate that Creel's responsibilities were more than he claims. While Con-Plex had a general superintendent on the project (Treadway), the Department's engineers regularly consulted with him about the work being undertaken and not only plaintiff, but also another dozer operator (Creel's brother), regularly took instructions from him as to the work that these operators were to perform. If Creel's liability depended solely on his employment status with Con-Plex, we would have to find liability. However, a resolution of this issue does not hinge on this factor because, assuming arguendo, that Creel exercised supervisory authority over plaintiff, we are satisfied that his (Creel) conduct was not substandard.
Plaintiff argues that Creel is responsible as an executive officer of Con-Plex for failing to provide him with a safe place to work. Stated another way, that Con-Plex's failure to indicate the presence of the butane tank rendered the area in which he was working unsafe.
There is no question but that an employer owes his employees a safe place in which to work. In Samson v. Southern Bell Telephone & Telegraph Co., 205 So.2d 496, 502 (La.App. 1st Cir. 1967), we stated:
"Our courts have long since recognized and established the rule obligating an employer to provide his servants with a safe place in which to work. See Faulkner v. Milner-Fuller, Inc., supra [La.App., 154 So. 507].
"The basis for the rule is the employer's control of the condition of his premises. Having such control, the employer is charged with the legal duty of making the premises safe in order not to expose the employee to unreasonable, unwarranted, unseen or unknown perils inimical to the employee's physical well being. What constitutes a dangerous condition must obviously be determined in the light of the peculiar facts and circumstances attending each individual case."
The place of employment need not be the "safest possible place" but one which is "reasonably safe", considering the "nature of the work itself". Chabina v. The Travelers Insurance Co., et al., 251 So.2d 414, 416 (La.App. 1st Cir. 1971), writs refused 259 La. 902, 253 So.2d 223; Chaney v. Brupbacher, 242 So.2d 627, (La.App. 4th Cir. 1970).
With the above in mind, we look to the actions of Creel. The old residence had been vacant for many years and had been either removed or demolished prior to the day of the accident. Other bulldozers had previously worked the site. Shortly before the incident Creel had made a careful examination of the area looking for any object that might damage a bulldozer blade. He found none. One might expect that the dome of the tank would be above the ground but the testimony offered in this cause does not support such a conclusion. Plaintiff himself had been in the area and he observed nothing. Mr. Henry A. Cuti, an inspector for the Department, stated that he had been around the site where the tank was located on "numerous occasions" before the accident and had not observed the tank. He arrived shortly after the accident and observed no dome or any other portion of the tank that would be protruding above the ground. Thus, we must find that the plaintiff has failed to establish that the area in which the accident occurred was unsafe or that Creel had failed to see that which he should have seen or was in any other way negligent.
Accordingly, for the above and foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.