No. 6390.

ROBERT H. BARTLEY vs. CITY OF NEW ORLEANS.

Where in a contract to deliver a certain thing, no *time* for the delivery is fixed, the legal implication is that it shall be delivered within a reasonable time from the date of the contract.

If the party who has contracted to deliver a certain thing at a fixed price makes a tender of it at the proper time, and the party who has contracted to receive the thing refuses to receive it, the former may recover from the latter whatever damages are proved to have directly flowed from the latter's breach of contract.

Whoever claims damages, based on a deprivation of prospective profits, must establish such facts in evidence as will enable the court to fix with certainty, the amount of the deprived profits.

If the vendee in a contract of sale refuses to receive the article sold, the vendor may sell it at private sale; and on proving that he thus sold it at its full market price, he may recover from the vendee the difference between that price, and the price stipulated in the contract of sale.

APPEAL from the Superior District Court, parish of Orleans. *Lynch*, J.

*Hornor & Benedict* for plaintiff and appellee.

*B. F. Jonas*, City Attorney, for defendant and appellant.

The opinion of the court was delivered by

SPENCER, J. Plaintiff sues the city for breach of contract, and claims $11,583 30 as loss and damage sustained thereby.

He alleges that, as transferee of one W. W. Walker, he held a contract with the city to furnish 250,000 feet, running measure, of square timber, required for repairs to the city wharves; delivery to begin within five days after adjudication of contract, at the rate of 50,000 feet per month, if required, and to be delivered in front of the city at such localities as may be designated by the city surveyor, etc. The price to be paid in wharf improvement bonds, at the rate of ninety cents on the dollar, and eighteen cents per running foot. This contract was entered into on the sixteenth of June, 1874.

The city called for and received from time to time about 80,000 feet;

but in the spring of 1875 the city let out for a term of years the contract for repairing the wharves, requiring the contractor to furnish his own material therefor. Hence the city had no further use for the timber plaintiff was under contract to deliver. The plaintiff notified the city that he was prepared to deliver, according to contract, but received no response. On the seventeenth of June, 1875, he made, through a notary, a formal tender and offer to deliver, according to the contract, the remaining 170,000 feet; and notified the city that if his tender was not accepted on or before the twenty-second of June, that he would sell said timber for account and at the risk of the city, and hold her responsible for any balance due him under the contract. The city paid no attention to this offer, and on the twenty-third of June plaintiff made a public protest. In the meantime, however, the city ordered 6000 feet more, leaving. 164,000 not called for. Thereupon plaintiff brings this suit, alleging the above facts, and claiming that he sold said timber at private sale, and lost thereon as follows :

On 127,453 feet he lost 5 9–10 cents per foot. On 2283 feet he lost 8 4–10 cents per foot, and on 14,468 feet he lost 11 4–10 cents per foot; making his aggregate loss $11,583 20. This amount he claims from the city.

The answer of the city of New Orleans (page 13, Record,) admits the contract, but denies that the city ever made default thereon, and alleges that no term was fixed for the delivery of the said timber, but that said timber was to be delivered as required by the city, and at such points as might be designated by her proper officers, and "Respondent alleges that she did not require said timber up to the time of the tender, protest, and sale pretended to have been made by plaintiff; and respondent denies that the said contrac₃ gave any right to plaintiff to tender the said lumber at an inconvenient time, or in an unnecessary quantity to this respondent."

"Further answering, respondent denies that plaintiff ever had the quantity of lumber on hand, as alleged, at the time of the pretended tender, or that he was ready to deliver the same, and denies that the lumber which he had on hand was of the quality and description required by the contract; and respondent further denies that plaintiff ever made sale of the lumber, as alleged, for the risk of respondent, or that he ever suffered a loss upon the same, as alleged ; and respondent further denies that the said sale (if made at all) was made with her consent or knowledge, or in the mode and manner required by law, or that she is bound by. it, or concerned in .it, in any manner or form whatsoever."

There was judgment in plaintiff's favor for the full amount claimed, and the defendant appeals.

We think that under a fair interpretation of the contract the city was under obligation to take from plaintiff 250,000 feet of timber, and that plaintiff was bound to deliver at the rate of 50,000 feet per month, "if required." These words, "if required," qualified not the city's obligation to take, but that of the plaintiff to deliver. The contract does not, it is true, fix the time within which the city was to take the 250,000 feet, but where there is no term fixed for the performance of an obligation it should be within a reasonable time. C. C.

It is manifest, from the facts disclosed by this record, that after the city had let out or sold, as stated, the contract for wharf repairs for a term of years, it had no further use for plaintiff's timber and determined not to take it. We think, therefore, that plaintiff properly put her in default, as stated, on the twenty-second of June, and is entitled to recover such damages as he has proved to have been the direct and immediate consequence of her breach of contract. We do not find that in his formal tender he demanded cash instead of "wharf improvement" bonds. He did, in a previous communication to the mayor, suggest that, as the city was, by the constitutional amendment adopted in November, 1874, prohibited from issuing any more bonds, he was willing to take cash at the rate of seventy cents per dollar in lieu of bonds ; but we repeat that in the tender and offer made on the twenty-second of June he does not demand cash, or in any wise designate the mode of his payment.

We now address ourselves to the inquiry, what amount of damage and loss has plaintiff proved himself to have suffered ?

Under date October 12th, 1875, plaintiff furnished the city authorities the following "*statement*" of his claim, to wit :

"Sold to Gubernator and Terry, August 2nd, 1875, the following timber then on hand :

"First lot, 22,083 feet, on which there was an actual loss of five cents per running foot, amounting to ........................$1104 15
Second lot, 14,464 feet, on which there has been an actual loss
    of eight cents per foot ................................$1157 12
Third lot, losses on profits on 170,000 feet, amount undelivered
    on contract, of five cents per foot ......................$8500 00

It will be noticed that he claims loss on the whole 170,000 feet at five cents per foot, and then claims losses on 22,083 feet of this same 170,000 feet. In other words he claims losses on 36,547 feet more than he pretended the city was obliged to take.

It will also be noticed that under the head "third lot" his claim is for "losses on profits." It is manifest from the face of this statement that the plaintiff did not then have or sell to Gubernator any timber except that described as "first lot" and "second lot," amounting to

36,547 feet. Indeed, plaintiff, when on the stand as a witness, was forced to admit that he did not have and did not sell to any one the 127,453 feet on which he claims in his petition 5 9-10 cents per foot loss. He says, to use his own words: " That timber was not sold,   *   * 22,083 feet was sold at a loss of 4 8-10 cents per foot   *   * and then 14,464 feet at a loss of 4 1-10 cents per foot." In his petition he claims a loss on this 14,464 feet of 11 4-10 cents per foot, and as we have seen in his " statement" to the city authorities he claims a loss on it of eight cents per foot. In another part of his testimony he admits in substance that this 127,453 feet on which he claims loss was never got out, but he claimed "what there would have been if the contract had been carried out," he says. In fine, the testimony of his own partner, Markey, as well as that of Gubernator and Wells, satisfies us that these 127,453 feet of timber were, like Falstaff's adversaries " in buckram."

In fixing his loss on this imaginary lot of timber, he assumes that the city was to pay him, say eighteen cents per foot in bonds, and then *imagines or supposes* himself to have sold it at a much less price. This mode of estimating damages is too speculative for courts of justice to adopt. There is nothing in this record showing what it would have cost plaintiff to get out, bring to, and deliver in this city the timber in question, and nothing, therefore, to show what are the profits of which he has been deprived by the city's failure to carry out its contract.

We think the evidence shows that plaintiff had on hand and ready for delivery on the twenty-second of June, the date of his tender, 36,547 feet of timber, timber hardly up to the specifications of his contract, but which was afterward bought by Gubernator and used, by the city's consent, in repairing the wharves. When on the stand as a witness, he states his loss on this timber as follows :

On 22,083 feet, 4 8-10 cents per foot, making .................. $1060 00
On 14,464 feet, 4 1-10 cents per foot, making................... 593 02

Making total loss ....................:.......................... $1653 02

It is objected on the part of the city that plaintiff could not sell at private sale for her account and risk. This may be true ; but it is shown that he got for the timber all he could in the then state of the market, and as the city would not take the timber, he had a right to sell it for his own account, and claim from the city as damages the losses sustained.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof to the sum of sixteen hundred and fifty-three dollars and two cents, and as thus amended that it be affirmed. Costs of the court below to be paid by defendant, and those of appeal by plaintiff.