(61 South. 209.)

No. 19,031.

CUGGY v. ZELLER et al.

(Jan. 20, 1913. Rehearing Denied March 3, 1913.)

*(Syllabus by the Court.)*

1. TRIAL (§ 79*)—RECEPTION OF EVIDENCE—OBJECTIONS—SCOPE AND EFFECT.

Where an objection to testimony is made and is overruled, if it is intended that the objection is to extend to all testimony of a similar character to be given thereafter, the objection should be made so as to apply to all subsequent testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 192; Dec. Dig. § 79.*]

2. PRINCIPAL AND AGENT (§ 20*)—EXISTENCE OF AGENCY—ADMISSIBILITY OF EVIDENCE.

Parol testimony is admissible to prove a general agency and the course pursued, under the guise of this agency, by the agent, although this proof may in the end affect the title to realty. Subject discussed, and authorities cited.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 37, 38; Dec. Dig. § 20.*]

3. PRINCIPAL AND AGENT (§§ 61, 69, 78*)—MUTUAL RIGHTS AND LIABILITIES — FIDUCIARY RELATION.

The relation of principal and agent is one of trust, and the agent must bestow upon the affairs of his principal the care which a man ordinarily bestows upon his own affairs. The evidence shows that the defendant did not act towards plaintiff with the care and faithfulness that the law requires, and that the plaintiff, relying on her faith in her agent, was made to part with her property, and to transfer it to him. Such a sale is not binding on the plaintiff, and must therefore be decreed a nullity, or for the benefit of the principal, under the facts and circumstances of the case.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 96–98, 130–145, 162–177; Dec. Dig. §§ 61, 69, 78.*]

4. TAXATION (§ 803*)—TAX SALES—ACTIONS TO TRY TAX TITLE—PRESCRIPTION.

The prescription of three years, applying to tax sales, does not apply where the sale is an absolute nullity.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1588–1590; Dec. Dig. § 803.*]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mary E. Cuggy, wife of Henry

Egert, against Henry Zeller and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Woodville & Woodville, of New Orleans, for appellants. Dart, Kernan & Dart and G. G. Kronenberger, all of New Orleans, for appellee.

BREAUX, C. J. Plaintiff sued the defendants for an accounting and for a judgment annulling and canceling sales by her and different transactions. The realty consisted of lots and improvements on Napoleon avenue, sold by her on the 7th day of October, 1907, owing, as she avers, in substance, to the influence of one of the defendants and the assistance of the other. She also sold to the principal defendant, the father of the other, property designated No. 4318 and 4320 Magazine street in square No. 203. She also claims personal property and different items due by this principal defendant. In reciting the grounds of her complaint, she charges that after the death of her first husband, John H. Morphy, under the guise of friendship and good will for her, this principal defendant obtained control of the affairs of the succession of her late husband and of her own; that, in order to carry out his nefarious schemes, he represented to her that the estate was in a deplorable condition. She trusted him implicitly, and left to him the whole management. This principal defendant said to her that all of the property should be sold, and represented that, in order that he might sell it, a required amount was needed, which could be realized only by the sale of movable property. She, in her bill of complaint, enumerates the properties delivered by her to him in compliance with the request, amounting in all to about $500, which sum she charged he unlawfully retained; that, after having obtained this property, he appears to have changed his mind and advised that all of the property should be sold at tax sale as a means of settlement of the business; that, although she had a sufficient amount to pay the taxes, under his injurious influence she allowed the property to be sold, thinking that this defendant would become the owner for her, but that, instead of his becoming the owner on the face of the papers, his son, the codefendant, Reinhardt, became the adjudicatee; that shortly thereafter the son transferred the property to the father. By her allegations, she places the son, Reinhardt, in the attitude of an interposed party for the benefit of the father, Henry Zeller.

A Mrs. Hedges had a fractional interest in the property sold at tax sale. Plaintiff avers that this gave an opportunity to Henry Zeller to bring another influence to bear; that he represented to plaintiff that, if there was no confirmation of the tax title, the party above named would create embarrassment, as she was seeking to sell to some one else. The amount of the claim of this party was fixed at $1,300. Plaintiff further alleges, in substance, that she advanced $1,000, which she thought would go toward paying the $1,300, amount fixed upon as a compromise between her and Mrs. Hedges; but, instead of being thus applied, the amount went into the hands of the defendant, Henry Zeller.

That the vendee, Reinhardt Zeller, paid $1,000 cash. This amount she insists was the amount she handed to Henry Zeller for the purpose just before mentioned, for which she received nothing, so that, according to this theory, her own money was used to effect the sale.

·That on the same day that the act of confirmation of tax title was signed, before the same notary, Reinhardt, the interposed party, as before stated in the sale already noted (which we refer to here in order to state that which was the asserted price, $3,300) sold to Henry Zeller. The amount plaintiff alleges was never paid. That it was always under-

stood by her with Henry Zeller that he would take title for her use and benefit; that defendant Henry Zeller executed a private paper, handed it to her, in which he recognized her rights, but afterwards that he took away the paper from her; that, in carrying out his attacks upon the property, he leased it to her. She became the lessee of her own property.

So much for the property which was sold at tax sale, as before mentioned.

Another ground of plaintiff's complaint relates to property bequeathed to her by Pauline Lafitaeu. This property also, she charges, defendant succeeded in taking away from her for a pretended price. She alleges that she received no consideration.

There was also a complaint about $2,000, to which we will give some attention later.

Each defendant filed an exception and an answer. We will consider both the exception and the answer together. They plead the general issue, and urge a number of grounds of defense. The details, as stated by them, cover all the various facts from their point of view.

The judgment of the district court recognized the ownership of plaintiff to the property described in the judgment, consisting of property on Napoleon avenue, identified as the Morphy property formerly, and the other property identified as the Lafitaeu property, and ordered the different sales of these properties to be canceled, as well as the tax sale of the Morphy property. The judgment decrees that the sale made of the property on October 7, 1907, from Mary E. Morphy and Sarah Hedges to Reinhardt Zeller, are declared to be acts for the use and benefit of the plaintiff, Mary E. Morphy, wife of Henry Egert; and the title of the said Mary E. Morphy, wife of said Henry Egert, to said property in full ownership is hereby recognized and maintained. Judgment was also rendered for rents and revenues in favor of

132 LA.—8

plaintiff as against Henry Zeller, and the rents and revenues were fixed in the judgment, and, in addition, judgment was rendered in favor of Henry Zeller against the plaintiff, Mary E. Morphy, for $5,718.20 for repairs, taxes, and insurance, and for other sums advanced by the defendant, with legal interest on $2,000 thereon from August 27, 1907, with legal interest on $1,400 thereof from February 9, 1909, and like interest on the remainder of said sum from the date of this judgment until paid: and the allowances made to the plaintiff for rents and revenues and to the defendant for expenses and advances shall operate as an offset pro tanto, with the right of execution for the difference, if any. The right of plaintiff in possession was recognized, and all other claims of the parties inter se were denied and rejected, save as otherwise determined in the judgment. The judgment also condemned the defendants to pay the costs.

Our attention is in the first place attracted to plaintiff's complaint that the principal defendant captured her confidence completely by his assurances of friendship and good will; that, trusting him, she followed his counsel in all that related to the settlement of the estate; that he availed himself of that confidence, and became the owner of her property. If all that she alleges and swears to be at all true, there is really only one party to the different transactions, in which, in a short time, the defendant, before referred to, became the owner of all the property. In all this, plaintiff was only nominally a party.

We are of opinion, after having considered the evidence, that this defendant had most extraordinary influence over the plaintiff. It began during the last illness of her husband, and continued after his death. He admitted that he advised the plaintiff and assisted her, but sought very much to limit his admission. Despite his earnest efforts

to have it appear that he was not over-zealous in matter of the disposition of the property, it crops out here and there that he had unlimited authority, not exerted for plaintiff's best interest, but for his own. All of these acts of his have the appearance of an agency. She testified that he acted as her agent. But, on the part of the defense, it is urged at one time that, if it was an agency, it was not reduced to writing, and for that reason evidence on this point was not admissible in matter which might affect title to real estate.

[1, 2] It is true that there was a mild objection raised on this ground after considerable evidence had been taken. It was not pressed. As a result, the evidence was admitted, and it does not appear to have been objected to, as it should have been noted at the time that the objection would apply to all the testimony, particularly as the court directed the evidence to be admitted. Evidence of general agency, such as proven, was admissible, as it was inseparable from proof required to prove the general course taken in the different transactions. There are acts of a general nature which may be admissible between principal and agent to prove fraud, even though in the end it may result in affecting title to realty. Usage defines the powers granted to the agent. A cestui qui trust cannot be subject to fraudulent acts without any recourse against the trustee, because the power was not granted in writing. An agent must devote himself to the interest of his principal and act for him with the same care that an ordinary man bestows upon his own affairs. The duty is of such a nature that it is not easily brought within the strict definition of a rule.

[3] Now as to agency: There is proof which we consider of the best character. Defendant's attorney in the lower court, as a witness, answered as follows (as this is of importance in the case, it is cited in extenso):

Now, if he was agent, as we think it abundantly appears by the foregoing, the following is pertinent; so pertinent that we quote the whole:

"Q. Did you give her any advice at all as to what her rights were in any of these transactions?

"A. As I said before, Mr. Dart, she was informed about everything, and well informed.

"Q. But as lawyers, Mr. Bassich, we know the difference between advice—

"A. How could I advise her when she had somebody else?

"Q. Mr. Zeller was her adviser?

"A. Yes, sir.

"Q. That is what you mean?

"A. Yes, sir.

"Q. And she was apparently acting altogether under his influence?

"A. If you want the correct expression, I will try to give it to you.

"Q. Can you answer my question?

"A. Well, I cast no insinuations against the lady, but I will tell you—

"Q. No, don't cast any insinuations, but just tell me, Wasn't she apparently acting under his influence in all of these transactions?

"A. Well, it looked that way to me. In fact, she was infatuated with him. There is no doubt about that.

"Q. Now, Mr. Bassich, there was apparently, so far as she was concerned, the utmost trust and confidence reposed by her in Mr. Zeller during all of the time that they were coming to you in connection with these various matters? Is that correct?

"A. It looked that way up to the last. Yes, sir; I must say that.

"Q. And, in your judgment, you never saw more perfect trust and confidence upon a woman's part than you saw exhibited by this lady toward Mr. Zeller during the whole period that they were coming to your office? Isn't that so?

"A. It may be.

"Q. It seemed that way to you, did it not?

"A. Yes, sir; it seemed to be that way.

"Q. When he told her anything, she accepted it, and he appeared to be managing the whole thing for her, did he not?

"A. Yes, sir; I have already stated that, Mr. Dart.

"Q. That is correct, is it?

"A. Yes, sir."

The rule of equity, briefly stated, is that a purchase by a trustee or agent per interpositam personam carries fraud on its face. Michoud's Case, 45 U. S. (4 How.) 552, 11 L. Ed. 1076.

Self-interest will sometimes exercise a predominating influence and supersede that of duty. Id.

An agent cannot acquire an adverse interest to his principal. Meeker v. York, 13 La. Ann. 18; McClendon v. Bradford, 42 La. Ann. 160, 7 South. 78, 8 South. 256.

We will for a moment take up again the question of the admissibility of parol evidence, in order to cite authorities. The following decisions are directly in point: Montgomery v. Chaney, 13 La. Ann. 208; Le Bleu v. Savoie, 109 La. 680, 33 South. 729; Barrow v. Grant, 116 La. 955, 41 South. 220.

The facts show an unfavorable appearance. Defendant took a lively interest in disposing of plaintiff's property. Plaintiff, as a result, has been dispossessed of all she had. The proof does not sustain the contention that consideration has been paid.

We will not go much further into details. There is some question about the payment of the taxes by plaintiff ($74). Quite a dispute arose about the $3,200, which figures in one of the transactions, and again about $4,000, which defendant swears was paid at another time. The evidence is not satisfactory in regard to these payments.

The learned judge of the district court heard the witnesses; doubtless noticed their manner of testifying, their demeanor in court, of which there was some note taken during the trial. We have not arrived at the conclusion that the district judge erred.

Another fact has some bearing: The costs of the different acts were paid by the plaintiff. It is not usual for a vendor of property to pay the costs of sale. It gives rise to some presumption that the property was not to change owners. For some reason, not fully disclosed, the sales were made which resulted, in the end, in defendant claiming the property.

There is another significant fact: There was, we infer, a counter letter of some kind. In regard to this letter, Mr. Bassich, the attorney for defendant, testified: "The only thing that I drew up in the nature of a counter letter is that letter of May 30th.

"Q. But that was ten months after this, wasn't it? And you were paid for it specifically in a separate bill, were you not?

"A. Well, there may have been a counter letter."

This counter letter disappeared. Plaintiff swore that defendant had it. He, on the other hand, denies that there was such a letter; and yet, in the notary's bill, there is an item for preparing a counter letter. It follows, under the counter letter and the facts, judgment is for the owner.

There are other incidents connected with this case. We will not specially recite them. The foregoing is sufficient, as we think, to sustain the decree.

[4] As to the plea of prescription of three years, it does not apply to the tax title in this case, as it is an absolute nullity—a mere shadow. It was never intended that the taxpayer and the tax collecting department could be used to the end of obtaining property at tax sale in the manner attempted in this instance.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.