**MIRE et al. v. HAAS.**[*]

No. 16083.

Court of Appeal of Louisiana. Orleans.

May 17, 1937.

Porteous, Johnson & Humphrey, of New Orleans, and Sigur Martin, of Lutcher, for appellants.

Walter Lemann, of Donaldsonville, for appellee.

McCALEB, Judge.

Welcome Plantation is situated on the west bank of the Mississippi river in the parish of St. James. It comprises approximately 333 acres of land and, at the present time, its ownership is divided between a number of persons. John B. Mire is the owner of 50 acres of this land and holds a mortgage on the adjoining property belonging to Philogene Monconduit, who owns about 125 acres. Dennis Monconduit, as representative of the Monconduit heirs, controls approximately 100 acres of the tract, and ownership of the balance is divided between Jules Heary (40 acres) and Valmond Calvey (18 acres).

George Haas is a rice planter residing in the parish of St. James. During the early part of January, 1934, Haas was desirous of renting certain acreage in St. James parish for the purpose of cultivating a rice crop. The United States Government, under the Agricultural Adjustment Act (see 7 U.S.C.A. § 601 et seq.) had tentatively allotted to him a quota of 272 acres of land. In pursuit of his need to obtain suitable acreage for planting rice, Haas contacted John B. Mire and P. Monconduit, the plaintiffs in this case, and proposed to lease the acreage owned by them amounting to approximately 175 acres for the 1934 season. Negotiations were had between the parties, which resulted in the execution of a written contract of lease which reads as follows:

"St. James, La., Jan. 23, 1934.

"It is agreed and understood between J. B. Mire and P. Monconduit of 1st. part & G. Haas of the 2nd. part that J. B. Mire and P. Monconduit will rent lands bounded on upper side by property of A. Monconduit heirs and on lower side by property of Angel Wallis for the sum of four dollars per acre running land—that is ditches & road included in measurement wherever any crop is harvested.

"It is also agreed that rent of P. Monconduit lands be paid to J. B. Mire—

"Three hundred dollars to be paid on or before Sept. 15 Fifteenth 1934. Rest of rent to be paid before last ⅓ is harvested.

"[Signed]    J. B. Mire
"P. Monconduit
"Geo. Haas."

The foregoing document was made and signed in duplicate and delivered into the possession of Haas. Haas did not occupy the property leased during the season of 1934 and failed to pay the stipulated rent.

The plaintiffs, J. B. Mire and P. Monconduit, have brought this suit on the foregoing agreement against the defendant Haas, alleging, in substance, that he has refused to carry out the contract, and that they are entitled to a judgment of $700 (being the rental price at $4 per acre on 175 acres of land owned by them), and that the total amount of said rental is due to the plaintiff John B. Mire, because the contract of lease stipulates that the rent for the lands owned by P. Monconduit is to be paid to him.

Liability is resisted by the defendant, Haas, on the following grounds: That, at the time the contract of lease was executed between the plaintiffs and himself, it was understood by verbal agreement that the same was to become effective only in case he was successful in securing a lease from the adjoining owners of Welcome Plantation so that he would have, for the purpose of rice cultivation, at least 272 acres of land, which was the quota allotted to him by the United States Government; that the total amount of land owned by the plaintiffs, for the purpose of planting rice, was only 150 acres, whereas it was necessary and imperative for him to have at least 272 acres in order to make his rice crop. It is further alleged that the execution of the contract between plaintiffs and defendant was made with this specific understanding; that the contract was delivered to defendant in duplicate to be held by him until he obtained a

lease from the owners of the adjoining land; that he did not succeed in making a lease with the adjoining owners and immediately notified the plaintiffs of that fact; and that plaintiffs understood that there was no contract and agreement because the condition on which it was founded did not come into existence.

On the foregoing issues, a trial was had, and the district judge, after hearing the evidence, rendered judgment in favor of the defendant and dismissed the plaintiffs' suit. From this adverse decision plaintiffs have appealed to this court.

The first proposition contended for by the plaintiffs in this court is that the district judge erred in considering certain parol evidence, admitted without objection at the trial below, upon which the defense to the suit is grounded. This action is based upon a written lease contract; and it is argued that, under article 2276 of the Revised Civil Code, the court is without right to consider parol evidence which tends to vary or contradict its terms.

The plaintiffs further assert that the fact that the proferred evidence was admitted without objection is unimportant because article 2276 of the Code forbids the court from considering parol proof in variance or contradiction of the terms of a written instrument. We find it unnecessary to consider whether the plaintiffs' failure to object to the introduction of this evidence was a waiver of their right, inasmuch as we are of the opinion that the evidence tendered was not admitted for the purpose of varying the written lease, but for the object of showing that the contract did not become enforceable, due to the failure of a condition suspending its binding effect. According to the answer of the defendant, the obligation here was conditional and it was not to become effective unless the defendant was able to secure a lease to the adjoining lands of Welcome Plantation. See article 2021, Revised Civil Code. This condition, upon which the contract was to become operative, was a mixed condition depending jointly upon the will of the defendant and upon the will of the adjoining land owners of Welcome Plantation (who were not parties to the contract). See article 2025 of the Revised Civil Code. Parol evidence is admissible to show that such a contract was not to have effect until the happening of the suspending condition. In 10 Ruling Case Law, § 249, p. 1053, it is said:

"Parol evidence is admissible to show that a writing, in the form of a contract, never became operative as a contract. In other words, a separate agreement, constituting a condition precedent to the attaching of any obligation under the writing, may be shown by parol evidence."

And, on page 1055 of the same volume, it is provided:

"So it has become a settled rule in a majority of states that a written contract, whether under seal or not, may, by parol, be proved to have been delivered to the obligee upon a parol condition that it was not to become binding until the happening of a future event, and may be avoided upon the further proof that such event has not occurred."

In Blaushild v. Rockhold et als., 7 La.App. 709, is found a case strikingly similar in principle to the question presented here. There, it appeared that the defendants (general contractors) had entered into a contract with the Jackson Parish School Board to erect a public school building at Jonesboro, La., in accordance with plans and specifications made by one J. W. Smith, architect of Monroe, La. They subsequently entered into a subcontract with the plaintiff whereby he agreed to furnish and install the heating and plumbing system in the school building for $7,700. This subcontract did not specifically provide that it was to be effective only in case the work done by the plaintiff would be approved by Mr. Smith, the architect of the building. When the defendants were sued for breach of contract because they refused to permit the plaintiff to do the work, they sought to justify their conduct by proving by parol testimony that Mr. Smith, the architect, had failed to approve the subcontract between plaintiff and defendants and that it was understood that the agreement between the parties was signed with the distinct understanding that it would be subject to Mr. Smith's approval. Timely objection was made by counsel for plaintiff to the introduction of this parol evidence on the ground that it was an attempt to vary or contradict terms of the written instrument. The Court of Appeal for the Second Circuit, speaking through Mr. Justice Odom, then a member of that court, in approving the ruling of the trial judge and holding the evidence admissible, said:

"That rule [parol evidence], so well established, is not applicable in this case. The

testimony was not offered to vary or contradict the written contract, but to show a *distinct contemporaneous collateral agreement* between the parties at the time the instrument was signed that it should not be binding unless approved by the architect— in others words, to show that it was executed under a suspensive condition." (Words in parenthesis and italics ours)

In the case at bar, the plaintiffs stipulate that they will lease their lands to the defendant for $4 per acre. The defendant, when sued for breach of the contract, asserts that it was not to have binding effect unless and until he was able to secure a lease on the adjoining premises, or, in other words, that the agreement was subject to a suspensive condition. In proof of this defense, he offers parol testimony. This evidence was not tendered for the purpose of contradicting the terms of the written instrument, but was only submitted to show that the agreement never became effective, because its execution was dependent upon the happening of an event, which did not take place.

█ Finding that the parol testimony is admissible, we next consider the evidence adduced in order to determine whether the defendant has sustained his plea (that. the agreement herein sued upon is not binding upon him). In his answer, he admits the execution of the lease, but seeks to avoid liability thereunder because he contends that, first, the contract was not operative unless and until he was able to rent the adjoining property and, second, that, as a matter of fact, he was unable to lease that land. This defense being a special one, in the nature of a plea of confession and avoidance, the defendant carried the burden of establishing it to the satisfaction of the court.

The plaintiffs maintain that, at the time the lease was signed, it became an effective obligation and was not dependent upon whether the defendant was able to obtain a lease of the adjoining premises. They rely chiefly upon the evidence of Dr. Claude C. Melancon, who drew the contract of lease, John B. Mire, one of the plaintiffs, and Mrs. J. B. Mire. All of these witnesses testified, in substance, that, prior to the time the lease was executed, it was their understanding that the defendant had been negotiating with the owners of the adjoining property; that the defendant had been successful in prevailing upon those adjoining owners to lease their lands to him; that, at the time the

lease was made, nothing was said with reference to the lease of the adjoining land; and that both originals of the lease were delivered to the defendant in order that he might obtain the signature of P. Monconduit, the other plaintiff in the case, with the understanding that one of the originals of the contract would be delivered to Mr. Mire as soon as P. Monconduit had signed it.

On the other hand, the defendant, Haas, his two sons, and P. Monconduit (one of the plaintiffs), all testified that the lease was signed with the distinct understanding that it was not to become operative unless defendant was able to rent the adjoining lands of Welcome Plantation, and that the lease in duplicate was delivered to the defendant for him to hold until such time as he was able to make contracts of lease for the adjoining lands.

█ The district judge was of the opinion that the defendant's evidence prevailed on this point and he has favored us with a written opinion of his reasons for judgment. We concur in his finding and hold that it was the intention of all the parties, at the time the lease sued upon was executed, that it was not to become operative until the defendant was able to secure a lease from the adjoining owners of Welcome Plantation.

Being of the opinion that the contract was inoperative until the defendant could rent the adjoining premises, the question arises as to whether he was actually able to obtain a suitable lease. He testified that, the day after he signed the contract with the plaintiffs, he went to see D. Monconduit, Heary, and Calvey (the adjoining landowners), and discussed the question of renting their property. Before he contacted them, he had written in his own handwriting a lease which he proposed to make with them and which reads as follows:

"We the undersigned hereby agree to lease to Geo. Haas our lands bounded below by J. B. Mire and above by Wright Poirier for the purpose of planting rice for season 1934. For the consideration of $4.00 four dollars per acre payable October 15, 1934 or sooner when ½ of crop is sold or taken off. It is also agreed that pasture and cabins of A. Monconduit heirs is included without special compensation to above.

"Further Valmond Calvey agrees to permit a drainage ditch across his property during irrigation season and each of undersigned to one another for same purpose without special compensation.

"Valmond Calvey leases only 18 acres from front starting point reserving balance in rear."

This proposed lease was signed by D. Moncónduit, Valmond Calvey, and Jules Heary, the adjoining landowners. Haas, however, says that he (although he had drawn the agreement himself) refused to execute it because he did not want to pay the rent for the lands when one-half of the rice crop was sold or taken off.

We have found that the contract in suit was dependent upon Haas' ability to rent the adjoining lands. The evidence also shows that he could have rented these lands and that it was due to his own refusal to agree to the terms of payment of rent insisted upon by the adjoining proprietors, that the lease to these lands was not executed. Therefore, the question arises as to what was the intention of the parties respecting the suspensive condition of the contract in suit. Did plaintiffs and defendant intend that this contract was not to be operative unless Haas could rent the adjoining lands at his own price or on his own terms? Or, was it their intention that Haas should be relieved of liability only in case he could not rent the adjoining lands for a fair price and on reasonable terms? We are of the opinion that the condition, which suspended the binding effect of the contract, must be construed reasonably, and we hold that it was obviously the intention of the parties that, if Haas was able to rent the adjoining premises for a just price, payable upon moderate terms, the contract became operative, notwithstanding his refusal to enter into the lease with the adjoining landowners. To hold otherwise would be to render the suspensive condition impotent and invest Haas with the power to prevent the contract from ever going into effect by capriciously objecting to the terms and conditions proposed by the adjoining land owners. In other words, such a construction would allow him to defeat the happening of the condition, suspending the operation of the contract, and grant to him exclusive control over the agreement. This view would, in effect, be a recognition that the suspensive condition was potestative. We deem it our duty, in seeking the intention of the parties, to adopt a construction which will give valid effect to the agreement rather than one which will destroy it. In Interstate Electric Co. v. Goldberg, No. 8234 of our Docket (see Louisiana and Southern Digest), we said:

"A stipulation, or agreement, susceptible of more than one construction, will not be given that interpretation which is potestative in its nature, and abhorrent to the civil law, R.C.C. 2034."

We find that the condition suspending the operation of the contract before us was mixed, and was therefore dependent upon the will of Haas and that of the adjoining proprietors. These proprietors consented to rent their lands to Haas, and we cannot allow him to prevent the condition, suspending the operation of the contract sued on, from coming into being, unless the price, demanded by the adjoining owners, was unfair or unless the terms of payment were unreasonable.

A reading of the proposal of the adjoining landowners reveals that they offered to rent their property to Haas for the same price, viz., $4 per acre, as that contracted for by the plaintiffs, so that it cannot be said that the stipulated price was unfair. The terms of payment of the rent, as shown by the offer to Haas, are that it does not become due until October 15, 1934, or until one-half of the rice crop is sold or taken off the lands. In the contract in suit, Haas promised to pay $300 (or approximately half of the rent) on or before September 15, 1934, and the balance before the last one third of the crop is harvested. Comparing this stipulation with the terms of payment demanded by the adjoining owners in their proposal, it will be readily deduced that the latter is neither onerous or unreasonable.

The testimony of Haas, respecting his reason why he would not sign the contract with the adjoining landowners, is far from impressive and, while he attempted to explain that the agricultural branch of the United States Government might not have let him pay his rent in the manner proposed, there is, in truth, no substantial justification for this assertion. The fact is that he later succeeded in obtaining the St. Clair Plantation for the planting of rice for the year 1934. He does not testify as to the amount of rent he paid to the owners of that plantation, but it is fair to surmise that he was able to lease it for a smaller price and on better terms than those contained in his contract with the plaintiffs.

The learned trial judge was of the opinion that the mere fact that the lease between Haas and the adjoining landowners was not consummated was sufficient to relieve Haas from liability on the contract in suit. In this respect, we believe that he was in er-

ror, as we find that Haas had the opportunity of renting the lands of the adjoining owners at a fair price and on reasonable terms of payment. Article 2040 of the Civil Code provides:

"The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it."

Haas had contracted to perform the condition suspending the operation of the lease, if he were able to rent the adjoining lands at a fair price. He had the chance to do so, and, for unjustifiable reasons, prevented the fulfillment of the condition. By invoking the provisions of article 2040, we hold that the suspensive condition is to be considered as being fulfilled. See Aronson v. Klein, 175 La. 506, 143 So. 389.

■ Counsel for defendant argues that in no event should we grant judgment in favor of P. Monconduit for the reason that he testified that he had no claim against the defendant, Haas. But P. Monconduit is merely a nominal party plaintiff to the suit at bar, inasmuch as he had assigned all of the rent he was to receive from the lease itself which provides "that rent of P. Monconduit lands be paid to J. B. Mire." It follows that any expressions by him in regard to the absence of legal liability of Haas on the contract cannot be used to prejudice the rights of Mire, his coplaintiff and assignee.

■ Counsel for defendant further persists that, even though we should find that the defendant, Haas, has breached the contract, still plaintiffs are not entitled to a judgment because they have not specifically shown the amount of their damage. We find no merit in this contention. The plaintiff's damage is the rent, which would have been paid to them except for the defendant's breach of contract. If the defendant believed that the plaintiffs were not damaged to the extent claimed by them, he could have set this up as a defense and have shown that such was the case by competent evidence.

■ In a late brief filed by counsel for defendant, he tells us that D. Monconduit did not represent the Monconduit heirs and that, therefore, the defendant was unable to secure a lease of the adjoining lands of Welcome Plantation. If this is so—and there is nothing in the record from which we may come to the conclusion that D. Monconduit did not represent the Monconduit heirs—it was a matter of defense, and the burden of showing it was upon defendant, who made the special defense that he was unable to obtain the lease from the adjoining landowners.

■ We must now determine the amount of the judgment to which plaintiffs are entitled. They sue for $4 per acre rent on 175 acres. Defendant admits, in his answer, that the plaintiffs own 150 acres of land which are suitable for rice cultivation. The lease itself does not mention the number of acres rented to the defendant, but it does provide that the lands of the plaintiffs are leased for the sum of $4 per acre running land "that is ditches and road included in measurement wherever harvested." It seems apparent from the foregoing that it was the intention of the defendant to only rent such land as was suitable for rice cultivation and, inasmuch as the plaintiffs have not offered evidence to show that the entire 175 acres owned by them are fit for this purpose, we feel that it is fair to assume that the defendant rented only lands of the latter class, or 150 acres.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the plaintiffs, John B. Mire and Philogene Monconduit, and against the defendant, George Haas, in the full sum of $600, with legal interest thereon from judicial demand and all costs. It is further ordered that the full amount of the judgment and interest is to be paid by the defendant to the plaintiff John B. Mire, and that, when so paid, the defendant shall be discharged of any and all liability in the premises.

Reversed.