94 So.2d 297 (1957)
232 La. 386
August DUFRENE et al.
v.
James J. TRACY et al.
No. 42699.
Supreme Court of Louisiana.
February 25, 1957.
Dissenting Opinion February 26, 1957.
Rehearing Denied April 1, 1957.
*298 Coe, Nowalsky & Lambert, Edward R. Schowalter, New Orleans, for defendants-appellants.
Pertuit, Gemeinhardt, Johannesen & Roberts, by W. F. Gemeinhardt, New Orleans, for plaintiffs-appellees.
MOISE, Justice.
The defendants appeal from a judgment of the district court, which set aside a power-of-attorney, coupled with an interest. The power provided that the defendants vindicate title to property. The contract contained a suspensive condition, and at the time of its execution there was neither *299 ownership nor possession of the immovable. Plaintiffs' suit is predicated on alleged failure of performance.
The defense and reconventional demand aver the following:
(1) That there was no failure to perform
(2) That defendants were hindered from performing
(3) That there was no putting in default before the termination of the power-of-attorney
(4) That the power-of-attorney is coupled with an interest
(5) Plaintiffs' cause of action has prescribed by the passage of five and ten years. This plea was filed in our Court for consideration on this appeal.
Our learned brother below found in his reasons for judgment, the following:
"In June, 1941, Tracy & Neuhauser, a law firm, examined the public records in St. Charles Parish and discovered that plaintiffs might have an interest in 293 acres of trapping land. Tracy located plaintiffs, advised them of their potential interest, and obtained the power-of-attorney to recover the land, for which they were given a half interest in the land for `legal services rendered and to be rendered.' August Dufrene, one of the plaintiffs, was 55 years of age and was in the hospital, where his signature was obtained by making his mark; Mrs. Josephine Dufrene Ardoyne, another plaintiff, is a woman with little or no education; and John Candies, Jr., a nephew, a young man, a recent graduate of St. John High School, left for the military service shortly after the execution of the power and returned in 1944. Defendants had not previously known or represented the plaintiffs.
"Shortly after the execution of the power Tracy wrote to the law firm of Milling, Godchaux, Saal & Milling (represented by Mr. Benson) stating that Tracy's firm represented plaintiffs and he would like to discuss an adverse suit that Benson's firm had pending involving the property. The Milling firm heard no further from Tracy.
"Mr. Edward B. Ellis, another prominent attorney, likewise had a suit pending in connection with the property, which was dismissed in 1945 for want of prosecution. Mr. Ellis testified that the only contact he had with Tracy was about eight months before the present suit was filed (in 1955) when Tracy called on him to get a history of the litigation. Tracy testified that he spoke to Mr. Ellis on occasions long prior thereto.
"Following the execution of the power in 1941, Tracy said he made efforts to locate plaintiffs' family tree or geneology, but plaintiffs did not cooperate with him. Tracy employed the services of one Schouest, an ice cream peddler and electrician, who lived in the section where the Dufrenes came from, and who was generally familiar with the Dufrene families. Plaintiffs denied that they refused to cooperate with Tracy, contending they never heard from him. In the meantime, Tracy obtained an executive position with one of the agencies of the United States Government, after which he maintained no office of his own, though he testified he had office space with a prominent law firm; but no telephone was listed in his name in the telephone directory. Other than the testimony of Tracy that he tried to get information shortly after the contract was entered into in 1941, Tracy did nothing further until March or April, 1955, when, following a written notice to him by plaintiffs' new attorneys that his power-of-attorney was cancelled, he sought the assistance of the law firm of Coe, Nowalski & Lambert, which resulted in the filing of a *300 petitory action by Tracy for the recovery of the land.
"Tracy testified that he practiced law on weekends even while employed by the federal agency, and that the public records involving plaintiffs' land were so confused he didn't know what to do for plaintiffs.
"It is apparent from the evidence that, after he obtained the contract in 1941, Tracy did practically nothing. Neuhauser died and Tracy obtained his interest in the power. It was only in 1954, when oil was discovered and Tracy was notified of the termination of his power and the employment of other counsel, that Tracy bestirred himself and obtained assistance in April, 1955 from the law firm presently representing him here."
With all humility we say that in any court of justice where the rights of litigants are at stake we cannot deal with mere legal abstractions or facts that are supposed. We know of no rule for construing the extent of powers other than that given by the language of the instrument which confers them, taken in conjunction with the purposes for which they were conferred. LSA-C.C. Article 1901. A pertinent part of the power-of-attorney herein involved reads:
"* * * And the said constituents further declare that sale and transfer of Fee Simple interests and mineral rights, title and interests, is made in consideration of the professional services already rendered by the said Attorneys-in-fact herein and hereunder, receipt of which is hereby duly acknowledged by said constituents, and in further consideration of the professional services to be rendered by said Attorneys-in-fact, in bringing whatever action or actions they may see fit or proper, in order to secure judgment in favor of said constituents, against any and all adverse claimants of or to said property and its mineral resources, and in vindication of the rights of said constituents, and in further consideration of said attorneys-in-fact paying any and all court or other costs that may be necessary in said suit or suits, claim or claims.

* * * * * *
"And generally to do and perform all and every other act, matter and thing whatsoever, as shall or may be requisite and necessary, touching or concerning the affairs, business and concerns of the said constituents as fully, amply and effectually, and to all intents and purposes with the same validity, as if all and every such act, matter or thing, were or had been particularly stated, expressed, and especially provided for, or as they the said constituents could or might do if personally present; also with full power of substitution and revocation; and the said constituents hereby agree to and do ratify and confirm all and whatsoever the said attorneys shall lawfully do or cause to be done by virtue of this act of procuration."
The trial judge's reaction to the facts is manifested in the following statement taken from his reasons for judgment:
"The evidence convinces me that the services rendered by defendants prior to the execution of the power-of-attorney in 1941 were services rendered solely in their own interest, even before they knew or represented plaintiffs, solely to determine whether or not it was worth their while to undertake the employment and advance the costs necessary to accomplish the redemption of the land for the clients. Thereafter, no service of any consequence was performed until after the termination of the power-of-attorney in 1954."
The above findings were made after the reception of parol evidence. The trial judge was correct in admitting parol evidence to show what services were rendered prior to the confection of the instrument, since the *301 instrument was ambiguous to the extent it left the parties in doubt as to what was intended. An exception to Article 2276 of the LSA-Civil Code was apparent. Holloway Gravel Co., Inc., v. McKowen, 200 La. 917, 9 So.2d 228; Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Plaquemines Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171; Mire v. Haas, La.App., 174 So. 374. See also LSA-C.C. Article 1956.[1]
The contract in this case lives and breathes the fact that the obligations therein imposed are conditional. The right is merely a litigious one, which, under Article 3556, Section 18, of the LSA-Civil Code, cannot be performed without suit. In the so-called transfer made in the power-of-attorney there was neither the possession nor the ownership in the property involved, because transferee had neither. The obligation being conditional, Article 2021 of the LSA-Civil Code applies. Conditional obligations are made to depend upon an uncertain event. If the obligation is not to take effect until the event happens it is a suspensive condition. Article 2043 of the LSA-Civil Code provides the obligation contracted on a suspensive condition is that which depends on a future and uncertain event. The obligation cannot be executed until after the event.
The event in the present controversy was for the recovery of an immovable for the client, which event did not ripen into existence although fourteen years elapsed. Defendants are now attempting to acquire rights to property on negligent circumstances which were caused through their own fault and omission to do what they obligated themselves to do.
On the subject of suspensive conditions the United States Supreme Court speaks with authority in the case of City of New Orleans v. Texas & Pacific Railway Co., 171 U.S. 312, 18 S.Ct. 875, 883, 43 L.Ed. 178, as follows:
"The suspensive condition under the Louisiana Code is the equivalent of the condition precedent at common law.
"* * * Where the undertaking on one side is in terms a condition to the stipulation of the other,that is, where the contract provides for the performance of some act, or the happening of some event, and the obligations of the contract are made to depend on such performance or happening,the conditions are conditions precedent. * * * The nonperformance on one side must go to the entire substance of the contract and to the whole consideration, so that it may safely be inferred as the intent and just construction of the contract that, if the act to be performed on the one side is not done, there is not consideration for the stipulations on the other side. See Cutter v. Powell, 2 Smith, Lead.Cas. [7th Am.Ed.] 17, and notes." See also Cornell & Wife v. Hope Insurance Co., 3 Mart., N.S., 223, wherein it is stated with respect to suspensive conditions:
"* * * They are recognized and provided for by our system of jurisprudence, and by every other that has in view the ordinary transactions of men. The obligation is conditional, when it depends on a future or uncertain event, says our code. The event then must be shewn, to make the obligation binding on the party against whom it is presented. For until it takes place, he is not bound to perform what he has promised. C.Code, 272, Art. 68. "There is an exception to this rule in regard to the dissolving condition. But in relation to all others it is true, and it is a matter of no moment whether we say the obligation is suspended *302 until the condition is performed or that the performance of the condition must precede the execution of the obligation. C.Code 274, Art. 81 & 3. Toullier, droit civil Francais. liv. 3, tit. 3, chap. 4, no. 472. Pothier, traite des ob. no. 202."
In Article 1897 of the LSA-Civil Code we find the following expression of law applicable to this case:
"The contract is also considered as being without cause when the consideration for making it was something which, in the contemplation of the parties, was thereafter expected to exist or take place, and which did not take place or exist. * * *"
The contract did not express a time limit, but all reason dictates that defendants were expected to perform within a reasonable time. Fox v. Doll, 221 La. 427, 59 So.2d 443.
"In any event, when no time for performance of a contract is stipulated, a reasonable time is implied, to be determined by the circumstances of the particular case. See LSA-Civil Code, Article 2050; Lindsey v. Police Jury of Parish of Point Coupee, 16 La.Ann. 389; Bartley v. City of New Orleans, 30 La.Ann. 264; H. T. Cottam & Co. v. Moises, 149 La. 305, 88 So. 916. Moreover, the subject agreement, if serious, by its very terms necessarily implied that it was to be promptly consummated. * * *" Guzzo v. Liggio, 224 La. 313, 69 So.2d 357, 358.
The present subject matter is serious, and the defendants, being officers of the Court, should have promptly consummated their contract.
"The attorney in fact is bound to discharge the functions of the procuration, as long as he continues to hold it, and is responsible to his principal for the damages that may result from the non-performance of his duty." Article 3002, LSA-C.C.
"* * * An agent must devote himself to the interest of his principal and act for him with the same care that an ordinary man bestows upon his own affairs. The duty is of such a nature that it is not easily brought within the strict definition of a rule." Cuggy v. Zeller, 132 La. 222, 61 So. 209, 211.
It follows, therefore, that when defendants did not perform within a reasonable timeit is beyond any man's comprehension to say that fourteen years is a reasonable timethe suspensive condition was unfilled, and the contract was without a cause and could have no effect. It is stated in Article 1893 of the LSA-Civil Code:
"An obligation without a cause, or with a false or unlawful cause, can have no effect."
Defendants contend that before plaintiffs were entitled to institute this proceeding they should have placed defendants in default under Article 1912 of the LSA-Civil Code.
Deliberate action on the part of the defendant Tracy, such as not being listed in the New Orleans City Telephone Directory, and accepting work with the Veterans Administration from 1944 to 1949, constituted an active disregard of the power-of-attorney relationship into which he had entered in 1941. Article 1932 of the LSA-Civil Code reads:
"When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action."
The trial judge's following statement is appropriate:
"Tracy contends it was the duty of plaintiffs to locate him, yet he had no *303 office, no telephone, and had practically abandoned the practice of law or did it as a side-line to his government position. It was not incumbent upon plaintiffs to play detective and ferret Tracy out, notwithstanding Tracy was listed in the City Directory and was still listed by the State Bar as authorized to practice. These are matters with which laymen are not expected to be familiar. To the contrary, it was Tracy's duty to energetically and aggressively prosecute and fulfill his obligations and seek out and inform plaintiffs. Plaintiffs could have been located by Tracy with little effort."
Defendants filed a plea of prescription based on Articles 3542 and 2221 of the LSA-Civil Code in this Court. They argue that plaintiffs are precluded from bringing this action to rescind the contract of mandate by the prescription of five and ten years.
The judicial sense supporting the common sense of the State is against defendants' contention. The case of Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, 600, is apposite, although the facts are different. The following statement is concordant:
"For the negative it is said that the rule, `Contra non valentem agere no currit prescriptio,' is not recognized in this state; and the case of Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, is cited. In that case the court recognized that this rule did apply to certain cases exceptional in their features. A further exception must be recognized, we think, in a case like the present, where the inability of the plaintiff to act was brought about by the practices of the defendants. Otherwise the defendants would be profiting by their own wronga thing inadmissible in law. * * *"
In this case, we have an officer of the Court dealing with clients ignorant of legal procedure. He owed a most solemn duty to them, and after allowing fourteen years to elapse without making any attempt to perform his obligation, he cannot now claim the benefit of his own wrong. See, Landry v. L'Eglise, 3 La. 219. The plea of prescription is, therefore, without merit.
The solution of this case demanded a careful analysis of the facts and the law. A judge faced with a determination of a controversy, such as the instant matter, gives a penitent prayer of old, which reads:
"God give me the patience to accept that which cannot be changed, give me the courage to change that which can and should be changed, and, above all, give me the wisdom to know which is which."
For the reasons assigned, the judgment of the district court is affirmed at defendants' costs.
FOURNET, C. J., and PONDER and SIMON, JJ., dissent.
FOURNET, Chief Justice (dissenting).
This is a suit to have declared null and void, for failure of consideration, an instrument by notarial act executed by plaintiffs on June 3, 1941, wherein they named and appointed as their attorneys in fact the law firm of Tracy & Neuhauser, giving them broad and discretionary powers, and also to have this act, as well as all assignments thereunder, cancelled from the public record. In this instrument the plaintiffs did "sell, assign, transfer * * * and deliver," to these attorneys "an undivided One-Half (½) Fee Simple Interest in and to" certain property located in St. Charles Parish[1] for the recited consideration "of the professional services already rendered * * * and * * * to be rendered by said Attorneys-in-fact * * *." (Emphasis supplied.)
*304 According to the record, the real motive for the execution of the contract by the plaintiffs was the vindication of the title to the property, and inasmuch as these attorneys appointed by them for that purpose actually failed to carry out the duties under the mandate, the cause for the execution failed (Article 1823 et seq. of the Revised Civil Code),[2] and is therefore subject to the resolutory condition (Article 2035 et seq. of the Revised Civil Code),[3] which is prescribed under the provisions of Article 2221 declaring that "In all cases, in which the action of nullity or of rescission of an agreement, is not limited to a shorter period by (a) particular law, that action may be brought within ten years."
"Thus it may be seen that the lawmakers in their wisdom have deemed it to the interest of society to interpose a statute of repose by fixing a time limit (10 years), after which the parties at interest, by their silence and inaction, are conclusively presumed to have acquiesced in and ratified the act, and to have renounced such right as they may have had to attack it." Fried v. Bradley, 219 La. 59, 52 So.2d 247, 254. See, also, Pitre v. Peltier, 227 La. 478, 79 So.2d 746.
In the Bradley case we also pointed out that "Under the jurisprudence of this State the applicability of these two articles [2221 and 3542] has been restricted to those nullities that are not in derogation of public order and good morals. In considering them this Court has differentiated between nullities of that type and those established in the interest of individuals, and has narrowed the applicability of the articles to the latter class of nullities." See Article 2031 of the Revised Civil Code.
Since such procurations as are involved in this case are lawful, they cannot be said to be contra bonus mores, that is, repugnant to good morals, in themselves unless this court were to declare it against public policy to permit an attorney to take advantage of his own failure to perform an obligation to his client. And inasmuch as there has been no pronouncement by this court to that effect, I must respectfully dissent.
NOTES
[1] The record discloses that the defendants themselves opened the doors for the admissibility of parol evidence when their own attorney propounded the following question to witness for the defendants:

"Q. Do you know whether he did any work before June 3, 1941?"
[1] The property thus sold and transferred was an undivided half of the undivided half interest then owned by plaintiffs in the S/2 of Sec. 18, T. 15 S., R. 21 E., Southeastern Land District, containing about 295.36 acres, more or less.
[2] Article 1899 provides that if the obligations to be performed are either expressly or impliedly promised to be given at future periods and they fail, then the obligation depending on them will cease also.
[3] Article 2047 provides that "In all cases the dissolution of a contract may be demanded by suit or by exception * * *." It is only when the resolutory condition is an event depending on the will of either party that the contract is dissolved of right.