TAYLOR, Judge.
This is a suit in which plaintiffs pray that defendants, Mr. and Mrs. Anthony Guichard, be declared to have abrogated an alleged agreement for the purchase of the contents of a certain hardware business at 206 West Harrison Avenue in the City of New Orleans. They further pray that their deposit of $4,000.00 be returned along with an additional $4,000.00 since they argue the initial deposit constituted earnest money. In addition plaintiffs pray for $1,000.00 trespass damages, alleging that defendants illegally seized premises which they had leased; and for $300.00 which represents rent paid to defendants. From a judgment rendered in favor of the plaintiffs in the amount of $4,300.00, defendants prosecute an appeal to this court.
The facts of the case are substantially as follows:
On July 18, 1966 plaintiffs and defendants entered into the following agreement:
“Agreement
“Know all men by these presents that Desimone Salvator, Raymond Schultz and Vincent Marconi do hereby enter into the following agreement with Mr. & Mrs. Anthony E. Guichard:
“Whereby Salvator, Schultz and Marconi will form a corporation in the State of Louisiana known as ‘All Flags Supply, Inc.’ and after the corporation is created they personally and the corporation shall, through a bulk sale contract purchase all of the stock now located at 206 B. W. Harrison Avenue for an agreed price of Ten thousand ($10,000.00) Dollars. That the sale will be for terms, $4,000.00 Cash— balance payable at $250.00 per month over a 2 year period each payment to be made on the 1st day of each month beginning September 1st, 1966. There shall be no interest on this unpaid balance unless they [sic] monthly payment for any month is delayed 10 days or more, in which event the unpaid balance will then be assessed interest at 6% per annum on the unpaid balance until paid.
“Further Salvator, Schultz and Marconi agree to enter into a 2 yr lease *56 agreement with Mr. & Mrs. Anthony E. Guichard whereby Mr. & Mrs. Guichard will lease unto Salvator, Schultz and Marconi and the All Flags Supply, Inc., the commercial premises designated by the address 206 B. W. Harrison Avenue for the sum of $300.-00 per month with the 1st payment due and payable on the 18th day of July, 1966.
“All parties agree and attest to this agreement by there [sic] signatures hereto that this is merely an agreement of intentions and that the instrument of bulk sale and lease shall be prepared by the attorney selected by Mr. & Mrs. Anthony E. Guichard in accordance with basic terms herein outlined and other terms agreed to at a meeting of parties hereto prior to the signing hereof. * * *"
(Underscoring added.)
Said agreement was drawn up by counsel for defendants, plaintiffs being without benefit of counsel at this time.
Prior to the date the agreement was signed defendants had received $1,000.00 from plaintiffs and had given a receipt therefor. At the time the agreement was signed defendants received an additional $3,000.00, at which time the first receipt was torn up and a new one was given in the amount of $4,000.00. On the receipt itself this sum was denominated as a down payment on the inventory of the hardware store. There is no testimony relative to the terms of any negotiations which were conducted prior to the date the agreement was signed. Mrs. Guichard testified there was a meeting prior to July 18 at which time plaintiffs orally agreed to purchase the business. Plaintiffs deny this.
On July 18, 1966, at the time the agreement was signed, Mrs. Guichard turned over the keys to the hardware store to plaintiffs. Plaintiffs had all the locks on the store changed and took possession of the business and began to run it.
Then, on Saturday, July 23, 1966 the parties again met, this time for the purpose of drawing up and signing a written document of sale relative to the business. Plaintiffs appeared and, for the first time, brought an attorney with them. On the advice of counsel, plaintiffs demanded that defendants supply them with a list of creditors and that the sale be passed pursuant to LSA-R.S. 9:2961 et seq. (The Bulk Sales Law). Defendants refused to supply a list of creditors and the meeting terminated without any written agreement being signed. Plaintiffs continued to operate the business for the remainder of the work day on Saturday but did not re-open the store again on Monday. The store apparently remained closed and unopened for business for approximately one week, at which time defendants repossessed the premises.
Subsequent to the time defendants reoccupied the store, attorneys for plaintiffs and defendants negotiated by mail to determine if the parties could come to terms relative to passage of the act of sale. No such agreement was reached and this suit was therefore filed in which plaintiffs allege that defendants defaulted on the aforementioned written agreement.
Defendants answered and filed a re-conventional demand for $42,100.00, alleging that they entered into an oral contract of sale with plaintiffs for the business in question. They further argue that they were paid the sum of $4,000.00 on the purchase price by plaintiffs who verbally agreed to pay an additional $6,000.00 over a 2 year period at a rate of $250.00 per month. They further allege that they suffered damage when defendants abandoned the store in that the value of the business went down and additional damages by virtue of allegedly slanderous remarks plaintiffs are said to have made. It is to be noted at this point that no evidence was adduced at the trial relative to alleged slanderous remarks. Therefore we must assume that defendants have abandoned this *57 claim. Neither was there any evidence relative to a decrease in value of the business as a result of its remaining inoperative for the period between plaintiffs’ abandoning the store and defendants’ repossession of it.
Plaintiffs argue that the above quoted agreement constituted an agreement to purchase pursuant to the provisions of the Bulk Sales Law and that defendants defaulted on the contract when they refused to give a list of their creditors. Defendants on the other hand argue a verbal sale of the business was consummated in that object and price had been agreed upon and that plaintiffs’ taking possession of the store was an actual manifestation of the fact that title had passed.
We will first consider what, if any, rights and obligations were imposed on the parties by the above quoted written agreement. As may be seen from the terms of the agreement, it contemplates the formation of a corporation known as “All Flags Supply, Inc.” before any obligation to purchase could arise. If an obligation to purchase finally were to arise, the vendees were to be the plaintiffs and All Flags Supply, Inc. Therefore the agreement contains a suspensive condition. LSA-C.C. art. 2021; Zemurray v. Boe, 235 La. 623, 105 So.2d 243 (1958); Dufrene v. Tracy, 232 La. 386, 94 So.2d 297 (1957).
LSA-C.C. art. 2043 treats contracts containing suspensive conditions in the following manner:
“The obligation contracted on a suspen-sive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
“In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.” (Emphasis added.)
Plaintiffs and defendants admit and the record has established that the corporation was never formed. It is obvious that since the obligations of both parties depended upon the happening of an event which did not come to pass neither party is under any obligation to the other by virtue of its terms and the written agreement is unenforceable.
We are therefore of the opinion that the $4,000.00 was not earnest money since a valid obligation to purchase and sell did not come into existence and plaintiffs are not entitled to a return of the double. Since $4,000.00 was not earnest money the defendants had no right to retain or use it and must return it to plaintiffs.
We are likewise of the opinion that defendants have not proven an oral contract of sale had been confected. Mrs. Guichard testified that at the time the written agreement was signed and she allowed plaintiffs to take possession of the store, she felt she had sold it to them. Plaintiffs apparently proceeded under the supposition that the agreement which they signed governed the obligations of both parties and it is obvious that this agreement is not one of sale. There is no testimony by plaintiffs to indicate to the court on what basis they took possession of the premises at the time they signed the agreement. Nor is there any testimony relative to oral negotiations after the agreement had been signed.
Civil Code art. 1841 provides as follows:
“The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not [no] contract.”
It is obvious that the trial court was of the opinion that, through error, one party *58 believed there had been a sale while the other did not and that a sale had not been consummated. From a careful reading of the transcript, we are convinced that the trial judge was correct in his conclusion. There was an error on the part of both parties as to the nature of the transaction they were entering into. This in and of itself renders the transaction void. Green v. McDade, La.App., 17 So.2d 637 (1944); Williams v. Robinson, La.App., 98 So.2d 844 (1957).
We now pass to a consideration of plaintiffs’ claim for trespass damages and for the return of $300.00 paid to defendants as rent. Plaintiffs paid defendants the above mentioned sum on the night the agreement was signed and thereafter took possession of the premises. As stated before, we are at a loss to know why defendants gave plaintiffs authority to enter the premises at the time the agreement was signed. We can only assume the parties contemplated an act of sale being passed so shortly thereafter that for convenience sake they allowed plaintiffs to enter the premises beforehand. However we are convinced that plaintiffs’ presence in the hardware store was with the expectation that they would soon purchase the business pursuant to the written agreement to sell. We do not believe that plaintiffs intended to enter into a lease with defendants other than the one contemplated by the written agreement. There is no evidence --relative to negotiations between the parties to indicate otherwise.
We have already decided that the written agreement above quoted contained a sus-pensive condition which was never performed and that any obligations which might have matured under that agreement did not become enforceable. Accordingly, we feel that plaintiffs had not entered into a lease with defendants for the property in question despite the fact that $300.00 was paid. We assume that when the lease contemplated by the agreement was entered into, the $300.00 would be credited to plaintiffs’ account as paid in accordance with the terms of that lease. Since a valid lease did not exist at the time plaintiffs entered the premises there was no trespass committed by defendants in entering the property after plaintiffs apparent abandonment of it.
We are of the further opinion that defendants are not entitled to retain the $300.00 paid to them by plaintiffs. Since the lease contemplated by the written agreement entered into between plaintiffs and defendants was not executed, there was never an obligation to pay rent against which this $300.00 could be credited. When it became apparent that plaintiffs and defendants had reached a temporary impasse in their negotiations plaintiffs abandoned the premises and thus allowed defendants the full use and possession of their property. As we stated before, the record does not establish the basis on which plaintiffs took possession of the premises. Absent a finding of fact on this point, we feel defendants must return the amount in question to plaintiffs.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are to be borne by appellant.
Affirmed.