JOHN CRONIN & wife *vs.* LEONARD RICHARDSON & another.

If the grantor in a deed describes the granted premises in general terms, and reserves the wood and timber " on said premises, south of the meadow or low land," the reservation includes the wood and timber upon all of the granted premises which lie further to the south than the meadow, and is not limited to that upon the portion of the premises lying directly south of the meadow.

TORT for breaking and entering the plaintiffs' close, and cutting and removing trees therefrom. At the trial in the superior court, before *Rockwell*, J., a verdict was returned for the plaintiffs, and the defendants alleged exceptions to rulings of the judge, which are sufficiently stated in the opinion.

*J. D. Colt & T. P. Pingree, Jr.*, for the defendants, cited 2 Washburn on Real Prop. 632, 641 ; *Flagg* v. *Thurston*, 13 Pick. 150 ; *Sumner* v. *Williams*, 8 Mass. 174; *Doe* v. *Meakin*, 1 East, 458.

*W. G. Bates & B. Palmer*, for the plaintiffs, cited 2 Washburn on Real Prop. 631 ; *Harlow* v. *Thomas*, 15 Pick. 66 ; *Brandt* v. *Ogden*, 1 Johns. 156 ; *Jackson* v. *Reeves*, 3 Caines R. 293.

GRAY, J. The decision of this case turns upon the construction of the reservation in the deed to the plaintiffs from Erasmus D. Beach, (whose title the defendants have,) of a farm in Sandisfield, " lying on the south side of the highway leading to Marlborough, and bounded as follows, to wit: northerly on said highway, westerly on land formerly owned by Eliakim Hall, deceased, southerly on land formerly owned by Reuben Smith, deceased, and easterly on land formerly owned by John Sears, deceased, and the Kilbourns ; reserving to the said Beach all the wood and timber of every description standing and growing on said premises south of the meadow or low land through which the brook runs ; with the right to enter upon said premises wherever most convenient, to cut, cord and carry off said wood and timber, and for such length of time as the said Beach, his heirs and assigns, may desire."

By the plans and evidence introduced at the trial in the superior court, it appeared that the farm was nearly in the shape of

two squares, adjoining one another, the northernmost of which was by half its width further towards the east than the southernmost; that, near the place where these two squares joined, the farm was traversed by a brook flowing from west to east, through low land varying in width, on part of which alders grew, and to the northward and southward of which the ground rose abruptly towards the northern and southern ends of the farm; and that wood and timber grew on the southern part of the farm, the only access to which for teams was by a path across the brook and low land.

The defendants, under the reservation, claimed the right of cutting wood and timber over the whole of that part of the farm which lay further towards the south than the brook and low land. But the presiding judge instructed the jury that this right was limited to so much of the farm as lay " directly south," or, in other words, " between two due south lines drawn from the southeast and southwest corners of the meadow or low land, if those corners were respectively as far east and west as any part of the land."

The court are of opinion that this instruction cannot be supported, and entitles the defendants to a new trial. The boundaries in the deed describe the whole farm as one parcel, in the most general terms, and are followed by a reservation of " all the wood and timber of every description standing or growing on said premises south of the meadow or low land through which the brook runs." The word " south " is not here used, as in the New York cases cited for the plaintiffs, to designate the course of a boundary line, but to indicate the position of the reserved wood and timber, as compared with the meadow or low land, and to except out of the grant all the wood and timber growing southwardly of, or more to the southward than, the low land between the two ascents. The purpose may be said, in geographer's phrase, to have been rather to establish a parallel of latitude, north of which wood should not be cut, than to confine the right of cutting wood between certain lines of longitude. This low land is thus made the northern boundary of that portion of the farm on which the grantor reserves the

right to cut wood; and of course excludes any right to cut trees, whether growing singly or together, on the northern part of the farm, or the alders growing on the low land.

*Exceptions sustained*