23 So.2d 171

## PLAQUEMINES OIL & DEVELOPMENT CO. v. STATE.

No. 37623.

June 5, 1945.

Rehearing Denied June 29, 1945.

James I. Smith and Joseph A. Loret, both of Baton Rouge and Fred S. LeBlanc, Atty. Gen., W. C. Perrault, 2d Asst. Atty. Gen., and R. H. Lee, Sp. Asst. Atty. Gen., for defendant-appellant.

Monroe & Lemann, of New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

Plaintiff, Plaquemines Oil and Development Company, instituted this suit against the State of Louisiana under the authority of Act 11 of the Extraordinary Session of 1942, to have the title conveyed by Louisiana Patent No. 8389, dated January 9, 1902, adjudicated by the District Court for the Parish of East Baton Rouge; which act, after describing the property conveyed by the patent, provides that the judge shall decide which of the claimants is the owner of the property in dispute, and that the effect of any final judgment in such suit shall be res adjudicata of the rights of the State of Louisiana and of other parties to such suit with reference to the title.

Plaintiff alleges that the description contained in said patent was formulated by

the Register of the State Land Office, and was intended to include, and did include, all of the unsurveyed sea marsh in Township 24 South, Ranges 30 and 31 East (not included in certain exceptions made in the description as set forth in the patent), which sea marsh was estimated to contain 2425 acres. It prays for a judgment against the State, decreeing it to be the owner of the property described in said patent.

To this petition the State filed the following exceptions: Jurisdiction ratione personae, jurisdiction ratione materiae, immunity from suit, vagueness, one styled "immateriality", and no right or cause of action. All of these exceptions were overruled by the lower court. The State then filed an answer of general denial, admitting, however, the approval to the State of the land as described in plaintiff's petition, the application made by Arthur Yancey, plaintiff's author in title, and the issuance of a patent to the said Arthur Yancey, as set forth therein. However, it specifically denies that said description as contained in the patent was intended to include, or did include, all the unsurveyed sea marsh in Township 24 South, Ranges 30 and 31 East, not included in the exceptions made in the description contained in said patent.

The lower court rendered judgment for plaintiff as prayed for, and the State appealed.

The facts as disclosed by the record are as follows:

(1) On May 6, 1852, there was approved to the State of Louisiana under the act of Congress approved March 2, 1849, the following described property, to-wit:

| "Parts of Sections | No. of Section | No. of Township | No. of Range | Area Acres; Hdths. | Estimated Area Acres; Hdths. |
|---|---|---|---|---|---|
| "All the unsurveyed Sea Marsh *West* of Lots fronting on the South West Pass of the Mississippi River, excepting such portions as are reserved by proclamation of the President of the U. S. dated 31st Jany. 1841 in Township | | 24 | 30 | Except Sec. 16 | 480:00 |
| "All the unsurveyed Sea Marsh *West* of Lots fronting on the SW. pass of the Mississippi River, & *East* of lots fronting on the left bank of said pass, excepting such portions as are reserved by proclamation of the President of the United States dated 31st Jany. 1841, in Township | | 24 | 31 | Except Sec. 16 | 2500:00" |

(Italics here and elsewhere in this opinion are ours.)

(2) On November 9, 1901, Arthur Yancey made application to enter, under the provisions of Section 11 of Act 75 of 1880, the following property, *as per description formulated by the Register of the State Land Office*, to-wit:

"All of the unsurveyed sea marsh *west* of lots fronting on the right bank of the S.W. Pass and *east* of lots fronting on the left bank of said pass of the Mississippi River, as is outlined or designated on the official plat of survey approved April 12, 1852, (except such tracts entered by John Laidlaw, James Ford and G. M. Bowditch and George Jurgens containing 555 acres and excepting such portions as are reserved by proclamation of the President of the United States dated 31st Jany. 1841 and the 16th Sections) in Township No. 24 S. Ranges Nos. 30 and 31 E. S.E. Dist. W. of R. being in the Parish of Plaquemine[s] containing 2425 acres, estimated."

(3) On January 9, 1902, the State issued to Arthur Yancey its Patent No. 8389, signed by the Governor of the State and the Register of the State Land Office, describing the property exactly as it was described in the application and as above set out, setting forth that said property as described contained "Two Thousand Four Hundred and Twenty Five acres, according to the official plat of the survey of said lands in the State Land Office".

(4) Arthur Yancey, patentee, paid to the State the sum of $338.37, being the purchase price of 2425 acres at 12½¢ an acre, according to the provisions of Section 11 of Act 75 of 1880, plus fees charged, which sum the State received prior to the issuance of the patent and has retained ever since.

(5) Arthur Yancey conveyed the property as described in said patent to the Plaquemines Oil and Development Company, a Louisiana corporation, and this corporation subsequently, by the same description, conveyed the property to the plaintiff herein, Plaquemines Oil and Development Company, a Delaware corporation.

(6) The assessment rolls for the Parish of Plaquemines disclose that the plaintiff and its authors in title were assessed with 2425 acres of land under the same description as set forth in the patent, and the tax receipts and other evidence disclose that these parties have paid all taxes from the date of the patent down to the date of the filing of the suit, a period of more than 40 years.

The validity of the patent in this case is not questioned. The issues between the parties to this litigation, narrowed down, are these: Plaintiff contends that the description as set forth in said patent was intended to include, and did include, all of the unsurveyed sea marsh in Township 24 South, Ranges 30 and 31 East, not included in the exceptions made in the description, which sea marsh was estimated to contain, according to the official plat of the survey of said lands, 2425 acres. Defendant contends that the description in said patent conveyed to the patentee the land *exactly west* of the lots fronting on the right (west) bank of the Southwest

Pass and the land *exactly east* of the lots fronting on the left (east) bank of said Pass, and, if this contention is correct, the patentee acquired, according to the evidence, approximately 400 acres of land only, and not 2425 acres, as set forth in the patent.

■ Defendant contends that the description as contained in said patent is unambiguous, and that the words "east" and "west" as used therein mean, respectively, "due east" and "due west", and that therefore all that the patent conveyed is the land in Township 24 South, Ranges 30 and 31 East, due west of the lots fronting on the right bank of the Southwest Pass and the land due east of the lots fronting on the left bank of the Pass.

We cannot agree with the contention of the State that the description in the patent is unambiguous. On the contrary, we think that it *is* ambiguous, for the reasons (1) that the patent itself recites that the property described therein contains 2425 acres, while, under the contention of the State that the property conveyed by the patent is only that due east and due west of the river lots, the patent would convey only about 400 acres, according to evidence which defendant admits was adduced at the trial, and (2) that the description excepts from its provisions certain tracts entered by George Jurgens and others, although several of the tracts entered by Jurgens admittedly are south of the parallel of latitude running through the south end of the river lots, as disclosed by plats and maps filed in evidence and found in the record.

and do not lie in the lands due east or due west of the river lots.

■■ It is true that, in the execution of deeds and like instruments, the intentions of the parties must be gathered from inspection of the instrument without the aid of extrinsic evidence, if their intentions can be thus ascertained, but, if an instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in construction; or, in other words, when the intent of the parties is doubtful, the construction put upon the instrument by the manner in which it has been executed by both, or by one with express or implied assent of the other, furnishes the rule for its interpretation. Revised Civil Code, Article 1956; Holloway Gravel Co. v. McKowen, 200 La. 917, 9 So.2d 228; Marcotte v. Coco, 12 Rob. 167; Bender v. Chew, 129 La. 849, 56 So. 1023; Smith v. Chappell, 177 La. 311, 148 So. 242.

Under this rule, we have authority to look into the circumstances attending the issuance of the patent here under examination, and it is our purpose to look at the whole instrument and determine, with the aid of surrounding circumstances, what the State intended to convey under the patent and what Yancey, the patentee, intended to acquire thereunder.

In the approval to the State, quoted hereinabove, it can readily be seen that the total estimated acreage conveyed to the State was 2980 acres, and, deducting therefrom 555 acres, entered by Laidlaw, Ford,

Bowditch, and Jurgens prior to the patent to Yancey, and excepted in that patent, we find a net acreage of 2425 acres, which is the acreage set out in the patent to Yancey. In other words, the total acreage acquired by the State in this approval and disposed of by it was the same.

There is in the record correspondence between James M. Smith, then Register of the State Land Office, and the patentee, Arthur Yancey, and his attorney, Charles Rosen, with reference to the issuance of the patent and the application of Yancey therefor. From this correspondence, we find the following facts:

(1) Arthur Yancey intended to apply for, and receive, a patent for all of the unsurveyed marsh land belonging to the State of Louisiana in Township 24 South, Ranges 30 and 31 East, Southeastern Land District of Louisiana.

(2) It was the intention of the State Register to include in the patent to Yancey all the undisposed of acreage estimated in the approval to the State, as set forth in his letter to Mr. Rosen under date of December 4, 1901, from which we quote the following extracts:

"I regret to have to return the Arthur Yancey application for unsurveyed lands in Tp. 24, Rgs. 30 & 31, E. S.E. Dist., W. of River * * *.

"Mr. Seaman, who was with me then and very familiar with the records, plats, &c. prepared the description with care so there would be no mistake and so as to definitely locate the land applied for, and felt sure the description was all right. Please take your applicaton and go to the Surveyor General's office and compare it with the official township plat and see if I am not correct in saying it will throw your land in the river. If you are then satisfied then with the description I will make your entry at once. In doing so I would have to except two more entries made by George Jurgens in 1898; one in T. 24 S. R. 30 E., for 325 acres and the other in T. 24 S. R. 31 E., for 110 acres, with which the 120 acres excepted in your application amounts to 555 acres, also except that portion in each township reserved by proclamation of the President of the United States, dated Jany. 31, 1841, also excepting the 16th. section, *which will leave 2425 acres for Yancey as estimated from the approved lists.* * * *

"If you prefer and you think the following will cover the lands you wish you might correct Mr. Yancey's application so as to read as follows: * * *." (The description is the same as that set out in the application and in the patent.)

(3) The description in the application of entry was prepared by James M. Smith, Register of the State Land Office, as outlined or designated on the official township plat approved April 12, 1852, showing that the unsurveyed land in Township 24 South, Ranges 30 and 31 East, less the exceptions described therein, contained 2425 acres for Yancey, as estimated from the approved list.

(4) Upon the suggestion of the State Register, Yancey, the patentee, and his attorney, Mr. Rosen, went to the office of the Surveyor General and examined the

official township plat, and the gentlemen in charge of that office assured them that the description as formulated by Smith was correct, which description was accepted by Yancey.

(5) At the time the land was entered, there was on file in the State Land Office an official plat or survey approved April 12, 1852.

(6) Under date of December 7, 1901, Mr. Rosen, attorney for Yancey, returned the application to the State Register, stating that he had corrected the application so as to conform with the instructions of the Register with reference to the description, which description was exactly as given in Smith's letter to Rosen under date of December 4.

(7) Thereafter, under date of January 11, 1902, the Register mailed Patent No. 8389 to Arthur Yancey for *2425 acres* of land applied for, having accepted in payment therefor the sum of $338.37.

(8) On January 14, 1902, Rosen, attorney for the patentee, acknowledged receipt of Patent No. 8389 for 2425 acres of sea marsh land in Plaquemines Parish.

There is no doubt from the record that, at the time this land was entered, there was on file in the State Land Office an official plat of survey approved April 12, 1852, and that Yancey and his attorney, Rosen, actually saw and examined this plat. And Mr. Smith, the State Register, in formulating the description of the land, recited that it was the land "as outlined or designated on the official plat of survey approved April 12, 1852".

The record discloses also that this map has been lost and cannot be found at this time, and, upon plaintiff's establishing this fact during the trial in the lower court, it was properly permitted to make secondary proof of the contents of said map or survey, and this secondary proof is in the record.

In addition to the above, plaintiff offered in evidence photostatic copies of the tract books from the office of the Register of the State Land Office, which books show the entry by Yancey describing the land entered exactly as it was described in the patent, and referring to the official plat of survey approved April 12, 1852, and also showing that the exceptions amounted to 555 acres and that the total acres entered were 2425.

As previously stated, counsel for the State contend that the words "east" and "west" as used in said patent mean "due east" and "due west". However, it is to be noted that, when the State acquired the property from the United States Government, the words "east and "west" were used so as to embrace an estimated 2980 acres, or all the property in the township and ranges, as described therein, except that reserved by the Federal government and Sections 16. In other words, the State acquired by the identical description by which it sold, and, as said by the trial judge, "It would be unreasonable to say that in *one instrument* 'west' and 'east' mean 'south' or 'southeast' or 'southwest', and in the other that 'west' and 'east' mean due west and due east".

Moreover, in the patent to Yancey, certain exceptions were made, among these being lots previously entered by Jurgens, which lots are south of the parallel of latitude passing through the south end of the river lots and therefore not either due east or due west of the lots fronting on the river. And, if the State had construed these words to mean "due east" and "due west" at the time it acquired the property, there would have been no necessity for excepting the Jurgen lots from the description in the patent to Yancey for the simple reason that the State would not have owned the same. In addition, if the State, in patenting the property to Yancey, had intended that he should receive only the property due east and due west of the river lots, there would have been no reason whatsoever for excepting from the description therein lots lying not due east or due west, but south and southwest, of the property conveyed by the patent.

■ Counsel for the State cite authorities to the effect that the words "north", "south", "east", and "west", when used in a land description, mean, respectively, "due north", "due south", "due east", and "due west". We concede this to be the general rule, but these meanings do not hold in a case when the clear intention of the parties, shown either by the instrument itself or by the surrounding circumstances, is otherwise.

In Reed v. Tacoma Building & Savings Ass'n, 2 Wash. 198, 26 P. 252, 26 Am.St. Rep. 851, the court held that "west" ordinarily means "due west", and that this is the presumption, but that, when a deed

shows ambiguity, the presumption may be rebutted by extraneous testimony.

There are many cases, some of which have been cited by counsel for plaintiff, to the effect that the words "north", "south", "east", and "west" do not in all cases mean "due north", "due south", "due east", and "due west". State ex rel. Melvin v. Hackmann, 295 Mo. 14, 243 S.W. 337; Lawrence v. Kidder, 10 Barb., N.Y., 641; Weare v. Weare, 59 N.H. 293; Higgins v. Round Bottom Coal & Coke Co., 63 W.Va. 218, 59 S.E. 1064; Cronin v. Richardson, 90 Mass. 423; Powers v. Comly, 101 U.S. 789, 25 L.Ed. 805.

■ The patent in this case was signed by the Governor and the Register of the Land Office, and the State contends that the intention of the Register cannot be imputed to the Governor, who, it alleges, was the sole person acting for the State in the grant of the patent. If this contention were upheld, it would prevent proof of the intention of the parties in every instance in which an ambiguity occurs in a patent, for it is a matter of common knowledge that the Register prepares the patent for the Governor's signature, and that it would be impossible for the Governor to give his attention to such details.

■ From the facts and circumstances in this case, we conclude that by this patent the State intended to convey, and Yancey intended to acquire, all the property which had been approved by the government to the State in this approval in Township 24 South, Ranges 30 and 31 East, less that which the State had already sold to other individuals; that, further, in this

case the words "east" and "west" were intended to mean, and do mean, east and west of the meridian passing through the river lots, and that therefore the patent was intended to include all the lands as claimed by plaintiff in its petition.

Plaintiff contends that the State is estopped to dispute its ownership of the property described in said patent, for the reason that the State conveyed the land described therein, received and retained the purchase price therefor, assessed the property to plaintiff and its authors in title, and collected from these parties the taxes due thereon since the year 1902, and it cites numerous authorities in support of this contention. Since we have concluded that it was the intention of the State to convey, and of plaintiff's author in title, the patentee, to receive, the property as described in the patent, it is not necessary for us to pass upon this question.

In overruling defendant's exception of no right or cause of action, the trial judge correctly stated that "this is a statutory action, specifically authorized by Act 11 of the Extra Session of 1942. Hence, the law relating to petitory and possessory actions and the action in jactitation has no application to the case at bar. In the Act referred to, the State is referred to as a *claimant* of the property herein involved and this plaintiff is also referred to as a claimant by virtue of Patent No. 8389. The Act expressly provides 'that the judge shall decide which of the *claimants* is the owner of the property in dispute'. It is therefore a matter of no importance that the petition fails to contain an express al-

legation that the State claims to own the property involved. Besides this, the petition does affirmatively allege the grant to the State".

The exceptions to the jurisdiction ratione personae and ratione materiae, immunity from suit, vagueness, and the one styled "immateriality" are all, according to the brief of counsel for the State, based upon the State's contention that the patent was unambiguous, and that the words "east" and "west" therein meant "due east" and "due west", and, consequently, that the suit for the adjudication of the title to 2425 acres was beyond the terms and authority of Act 11 of the Extraordinary Session of 1942.

Since we have concluded that the patent in question is ambiguous on its face, and that the words "east" and "west" contained therein do not mean "due east" and "due west", it is our opinion that the trial judge correctly overruled these exceptions.

It is reasonable to suppose that Act 11 of the Extraordinary Session of 1942, the authority for this suit, was passed at the solicitation of the plaintiff herein, for the purpose of having the title to the property covered by the patent adjudicated upon by the district court, and, since this has been done and since costs cannot be taxed against the State, we deem it just and equitable that plaintiff be taxed with all costs of these proceedings. Section 2, Act 229 of 1910.

For the reasons assigned, the judgment appealed from is amended so as to tax plaintiff herein, Plaquemines Oil and De-

velopment Company, with all costs of these proceedings, and, as thus amended, the judgment is affirmed and made the judgment of this court.