TATE, Judge.
This is a boundary action. Both parties appeal from the boundary as fixed by the trial court.
The adjacent properties concerned lie in the South East Quarter of Section 22, Township 9 South, Range 3 East, SE La. District. This entire quarter section in Ascension Parish was originally owned by J. E. LeBlanc, the father of defendant and the grandfather of plaintiff. To simplify our discussion, below is a diagram of said quarter section. The tracts therein are denoted as “A”, “B”, “C”, and “X” by ourselves :

*177 The Boundary sought to be established by this suit is that dividing Tract “C” between Lots 1-3 owned by defendant LeBlanc, and between Lots 4-6, owned by plaintiff James. It is shown as AB in the above diagram.
The record shows that J. E. LeBlanc acquired the entire -quarter section in 1894, and in 1901 sold to strangers the eastern forth (El/2 of Ei^—Tract “X” in diagram). This tract plays no further part in the discussion, except that its western line (EF) is ■ accepted by both parties as the established eastern boundary of Tract “C”.
In 1908 J. E. LeBlanc sold “the NW portion of SEj4 Sec. 22 * * * containing 40 acres more or less being all that dry land north and west of Coulie or slough.” (Italics ours.) This is shown as Tract “A” above, and the controversy as to what was supposed to be.sold as “dry land” is chiefly responsible for the bulk of this record.
In 1919, the widow of J. E. LeBlanc sold Oliver LeBlanc what is denoted as Tract “B”, being a “fractional portion of SE(4 Sec. 22, T-9-S R-3-E containing 32 acres, being the SW portion of said SEJ4 Sec. 22” and being described, inter alia, as bounded north by H. Braud LeBlanc, the then owner of Tract “A”.
And in 1922, Tract “C”, the remainder of the lands of the J. E. LeBlanc estate in the quarter section was partitioned by joint deed, being described as “containing 48 arpents, more or less”. A rough diagram was drawn in ink on this conventional partition deed showing in an even rectangle, and in even rectangular dimensions, six lots numbered 1 to 6 (from west to east, as on the above diagram), shown as having 8 arpents each. The diagram represented these lots bounded by the respective owners of Tract “B” (on the west), Tract “A” (on the north), and Tract “X” (on the east), whose holdings were shown also as even rectangles. Through mesne conveyances, defendant LeBlanc became the owner of Lots 1, 2 and 3; and plaintiff James of Lots 4, 5, and 6. We may here state that the learned judge ad hoc correctly, in our opinion, considered this deed as a whole ambiguous as to whether six lots of equal acreage or six lots of equal frontage were created, and from extrinsic evidence determined that the specific intention of the parties to this partition was to create and partition six lots of equal frontage and uneven depth, rather than six lots whose acreage as equal could only be computed by the most involved of mathematical measurements and calculations.
Defendant’s plea of thirty years’ prescription under Article 852, LSA-Civil Code, is based upon the alleged boundary as having been established along a fence situated well within the James half of Tract “C”. The plea is not well founded. The separate estates were not created by the partition deed until 1922, and suit was filed in 1951, or less than thirty years later. A contention similar to the present that prescription should start from an alleged informal oral partition Jin 1919) rather than from formal execution of same (in 1922) was unsuccessfully made in Ford v. Pantallion, La.App. 2 Cir., 20 So.2d 574, certiorari denied, in which case like the present the contiguous estates were actually long farmed in common without any defin'ed boundary separating them. Further, the fence as presently situated seems to have been moved further eastward (into the James half) than the yard fence of the old J. E. LeBlanc homestead, upon which disappeared fence defendant actually seeks to rely.
Likewise, in the absence of any .evidence as to a boundary established by a previous formal survey complying with the codal articles, the pleaded ten years’ prescription under Article 853, LSA-C.C., cannot be sustained. Arabie v. Terrebonne, La.App. 1 Cir., 69 So.2d 516; Anding v. Smith, La.App. 2 Cir., 189 So. 362. Nor does the evidence reflect any acquiescence in any visible bound accepted as boundary such as has sometimes been held to admit of application of ten years’ prescription *178 under Articles 832, 853, LSA—C.C.; Kobler v. Koch, La.App. 2 Cir., 6 So.2d 55, certi-orari denied, Noted, 17 Tulane Law Review 304; see Picou v. Curole, La.App. 1 Cir., 44 So.2d 354.
There were four surveys introduced in evidence, and the record contains over 600 pages of testimony and exhibits. The present is perhaps typical of many boundary suits in that the court costs probably far exceed the value of the land in dispute, and in that the owners of the neighboring estates lived in peace and contentment with one another until one of them had his land surveyed.
Article 9 of defendant’s answer alleges:
“Defendant shows that if there is any shortage in plaintiff’s lands he cannot secure the same out of the property of the defendant, as he was one of the vendors to your defendant of the land involved herein, and is therefore es-topped from attacking the line or the contents or acreage therein conveyed, which estoppel is herein specially pleaded. And further that the deed of acquisition from plaintiff and others by defendant herein contains a clear and poncise description of the bounds of defendant’s land bordering on plaintiff’s, which if followed would obviate the necessity of a boundary action.”
This allegation is based upon the execution of a deed on August 22, 1942, by plaintiff James and others, attached as exhibit B-l to defendant’s answer’s answer, the body of which we here set forth in full:
“Know All Men By These Presents: That we,
* * * * * *
“2. Elmon J. James, married, husband of Bryan Smiley, living, a resident of the Parish of Ascension, La.;
‡ j}: ‡ ‡ ^
“hereby ratify and confirm the partition of the land described therein among Mrs. Aline LeBlanc, widow of J. E. LeBlanc, individually and for the undersigned, who were minors at the time, Rudolph LeBlanc, Adolph LeBlanc, Edward LeBlanc, Octavie LeBlanc James, Braud LeBlanc and Oliver Le-Blanc, dated January 7, 1922, and recorded in the Conveyance Records of Ascension Parish, Louisiana, Book 64, folio 62, which partition is made part hereof by reference.
“All that the undersigned, for the consideration and upon the terms and conditions hereinafter expressed, do by these presents grant, bargain, assign, sell, transfer, deliver, abandon and set over unto
“Rudolph Le Blanc, married, husband of Octavia Poirrier, living, a resident of the Parish of Ascension, Louisiana, accepting and purchasing for himself, his heirs, successors and assigns all and singular the following described property, to-wit:
“All of their right, title, interest, claim and demand in and to the Southeast Quarter, Section 22, Township 9 South, Range 3 East, Southeastern District, East of St. Helena Meridian and of the Mississippi River in Ascension Parish, Louisiana, and which said land is more particularly described as beginning at the Southeast corner of the property presently owned by Olive Le-Blanc, which point of beginning is five (5) acres from the Southwest corner of the southeast quarter of said Section 22, Township 9 South, Range 3 East, and measures East on the Public Road a distance of four hundred and sixty-eight and twenty-five hundredths (468.25) feet, more or less, then North between parallel lines a distance of eleven and one half (11 \/¿) arpents, more or less, containing twenty-four (24) acres, more or less. Bounded on the North by land of H. Braud LeBlanc; East by Elmon James; South by Public Road, and West by Oliver LeBlanc. The property *179 herein described was designated as Lots 1, 2 and 3 in the partition herein referred to.
“To have and to hold the said described property herein conveyed unto the said purchaser, his heirs and assigns, in full ownership forever.
“This sale is made and accepted for and in consideration of the price and sum of One Hundred and Sixty and No/100 ($160.00) dollars, and other good and sufficient consideration, the said vendors acknowledging receipt thereof and giving full acquittance for the same. * * *.
(By this deed defendant acquired the James’ heirs one-third interest in indivi-sión per the 1922 partition in Lots 1-3, having acquired one-third in his own name by the 1922 partition, and having acquired the remaining one-third in indivisión from his mother shortly after the partition.)
When this deed, noted in evidence as D-l and above quoted, was executed in 1942, plaintiff Elmon James was the owner of Lots 4-6, and had been since 1937.
The effect of plaintiff James’ contentions and of the surveys introduced by him would be to move the defendant’s, his vendee’s, eastern boundary line (AB) about 42^ feet westward of its location per the 1942 conveyance and into the tract sold, as well as to move its western boundary line (CD) about 87' westward from the location set forth in the 1942 deed (which latter location is close to the present fence dividing defendant’s property from Tract “B”), and into the middle of his neighbor’s front yard.[1] Understandably, defendant LeBlanc resists the effort to establish the boundary in this manner.
A grantor is estopped to assert anything in derogation of his deed. Lewis v. King, 157 La. 718, 103 So. 19, Succession of Griffin, La.App. 1 Cir., 165 So. 745, see 31 C.J.S. Estoppel § 10, p. 196, cf. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225. We think this principle to be determinative herein.
“When the two. estates have never been separated, the boundaries must be fixed according to the respective titles. R.C.C. 845” Opdenwyer v. Brown, 155 La. 617, 620, 99 So. 482, 483. In applying this principle, the trial court became unnecessarily involved in the determination of what Tract “A” ’s southern boundary was according to the 1908 deed — whether along the Bayou Narcisse (YZ), as several subsequent deeds and the subsequent behaviour of the parties indicated; or, instead, along an imaginary “water line” (QR) conscientiously and laboriously established by surveyors Woods and Tircuit upon their dogmatic assumption that the “dry land” conveyed by the 1908 deed must be the land north of the high water line'of old coulee referred to during the rainy season of year.[2]
For the purpose and prayer of this suit is only to establish the line (AB) between plaintiff’s and defendant’s portions *180 of Tract “C”, and the 1942 deed is certainly an instrument of title by which the boundary within Tract “C” should be set. Using this instrument, which binds the plaintiff-vendor as to the boundaries conveyed, and the initial Waties survey of March, 1952 (introduced as D-l and P-9), the boundary can easily be established, and should have been as a result of the initial hearing of July 1st, 1952.
The subsequent surveys and lengthy hearings of May through July of 1954 were unnecessary and were caused by the false premise, urged by plaintiff, that the court could overlook the 1942 conveyance by plaintiff to defendant. Proceeding on this premise, evidence was introduced to establish the alleged ideal limits of each tract severed from the LeBlanc Estate since 1908 in order to ascertain what ideally was left as Tract “C”; and then the dividing line of plaintiff’s and defendant’s lots was sought to be established by dividing the alleged ideal Tract “C” in half, even though portions included therein had been possessed by others than Tract “C” ’s owners for several years at the time of partition. Even though the owners of Tracts “A” and “B” were possessing portions of an ideal Tract “C” beyond the limits of their own titles,[3] it is to be supposed that the co-owners of Tract “C” who were parties to the 1922 partition deed creating the separate estates of Lots 1-6 were partitioning only the land which they possessed, and not also land possessed by others to which they had only a potential claim unknown even to themselves.
Furthermore, construing the ambiguous terms of the “dry land” conveyed by the 1908 conveyance,[4] the practical construction subsequently given the deed by the parties furnishes a better guide to interpretation of the original intent than does any speculative assumption fifty years later. Article 1956, LSA-C.C.; Plaquemines Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171; Metcalfe v. Green, 140 La. 950, 74 So. 261; Cormier v. Ferguson, La.App. 1 Cir., 92 So.2d 507.
And applying this rule of construction we find the evidence uncontradicted that the owners of Tract “A” and those of the tracts south of them always regarded the Bayou as the dividing boundary; that the owners of Tract “A” cut and sold timber and fenced down to the Bayou (rather than merely down to any imaginary water line) without protest from the owners of Tracts “B” and “C”.
Further, while two mesne conveyances describe Tract “A” as being bounded south by the Bayou Narcisse; no other deed in the chain of title to any of the other tracts ever refers to the “dry land” or to the imaginary water line of Tract “A” as their northern boundary, or is inconsistent with the Bayou being the northern boundary. (These latter deeds simply describe the tracts as bounded north by the contiguous *181 landowner of Tract “A”). And the presently accepted boundaries between Tracts “A” and “B”, and the acreages called for by the title deeds, are substantially in accordance with measurements resulting from accepting the Bayou as the bound, whereas using instead the so-called water line as northern boundary results in the delineation of tracts substantially differing from the present possession of their owners.[5]
It is worthy of note that surveyor Waties, initially appointed by the court to make the survey, reported back frankly admitting, unlike some of his more ambitious brother surveyors herein, that determination of the boundaries called for by some of the ambiguous deeds called for decision of legal questions within the competency of the court, not a surveyor. See Zeringue v. White, 4 La.Ann. 301; Bowman v. Flower, 7 La. 106. Further, he properly depicted ancient monuments. See Hall v. Bairfield, La.App. 2 Cir., 92 So.2d 753.
Referring back to the 1942 deed by which plaintiff is bound as to the boundary in question, we find that this deed fixes the western line of defendant LeBlanc’s tract thereby purchased as commencing five acres (i. e., 1043.5') from the SW corner (G) of the quarter-section, and the east line as being “468.25 feet, more or less,” east thereof along the public road which runs along the southern section line. Fortunately, the location of the SW corner (G), the west quarter-section line (GH), and the south line '(GE) are well established and not in dispute. Thus, the line (AB) dividing plaintiff’s and defendant’s Tract “C” is placed as 1511.75' east of the SW corner (G) of the quarter-section, and parallel to the eastern line (EZF) of Tract “C”, which fortunately also is well fixed and established.[6]
The very able judge ad hoc felt called upon to decide the irrelevant issues of the boundaries of Tracts “A” and “B”, not here involved, by the manner in which the issues were raised by plaintiff’s evidence. Accepting the Woods-Tircuit premises as to the southern boundary of Tract “A”, the trial judge refused to give effect to these surveyors’ division into equal acreages of what they had calculated to be the remainder of Tract “C”, and the judge divided this remainder of Tract “C” into two halves of equal frontage (per the intention of the parties to the 1922 partition deed). The result of this was to place the southern corner (A) of Tract “C” (containing plaintiff’s and defendant’s lots) 1484.01' east of the quarter-section’s SW corner (G), approximately 17' east of where the Woods survey had placed same, but still 27.74 west of where the common boundary line (AB), *182 as fixed herein, intersects (A) the southern section line (GCAE).
Using the ideal bounds — i. e., exactly 32 acres, all south of the bayou, assigned to Tract “B”; then dividing the remaining frontage of Tract “C” exactly in half — , the boundary between the tracts starts at the southern section some fifteen feet even further east (that is, further into plaintiff James’ land) than the line established by the 1942 deed. (See Kleinpeter survey, which however calculated tracts to have equal acreages rather than frontages.) But we feel that the 1942 deed, interpretive of the vague descriptions of the earlier conveyances — binding plaintiff-grantor; and by which defendant-grantee professed himself as willing to abide and pleaded estop-pel to changing same — furnishes a fairer line under the circumstances of this case.
It is apparent that the major portion of the costs incurred through this boundary suit was at the instance of plaintiff, Elmon James, in refusing to abide by the boundary as set forth by his own 1942 deed to defendant of his interest in the property in question, and in unsuccessfully advancing constructions of earlier title deeds to other tracts in the quarter-section which involved novel notions as to the limits of these other tracts, delimitation of which was unnecessary to determination of the boundary called for by the prayer of this suit. In defendant’s answer, he offered to abide by the boundary fixed as between the 1942 deed between the parties, which offer to settle the dispute amicably (along the line now accepted by this court) was refused by plaintiff. Prior to suit, the defendant offered to settle the boundary on this basis, which would have avoided the expense of litigation and the expensive surveys of the entire quarter-section. Under these circumstances, plaintiff should be cast with all court costs of this action. Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Miller v. Welch, La.App. Orleans, 66 So.2d 25; Lirette v. Duplantis, La.App. 1 Cir., 65 So.2d 639.
For the above and foregoing reasons, the judgment of the trial court is amended as follows:
The boundary between the tract owned by plaintiff Elmon James, being Lots 4-6 as described by partition deed Aline Le-Blanc et al., dated January 7, 1922, and recorded January 26, 1923 at CB 64, p. 62, records of Ascension Parish; and the property of defendant Rudolph LeBIanc, being lots 1-3 as described by said partition deed and as confirmed by sale to him from Velma James Dedon et al. dated August 22nd, 1942, and recorded October 2nd, 1942 at CB 80, p. 23, records of Ascension Parish; is hereby established as beginning at a point fifteen hundred eleven and 75/100 (1511.75) feet east of the Southwest corner and on the south section line of the Southeast Quarter, Section 22, Township 9 S, R 3 E, SE La. Dist. E of Mississippi, and extending and running northerly along a line-parallel to the eastern boundary line of plaintiff Elmon James’ tract, all as per survey of J. E. Waties dated March 1952' of the aforesaid Southeast Quarter, introduced as P-9, attached to the original of this judgment for recordation in the conveyance records of Ascension Parish;, which said survey shows said parallel eastern boundaries lies to run northward at an, angle of S 0° 56 E.
Plaintiff-appellee is cast with all costs of' these proceedings and of this appeal.
As thus amended, the judgment is affirmed.
Amended and Affirmed.

. Point A, by the 1942 deed and the Waties survey is 1511.75' east of the SW corner (G) of the quarter-section; and 1469.31 by the Tircuit survey. Point C, by the 1942 deed and the Waties survey is 1043.5' (i. e., 5 acres) east of said SW corner; and 956.16 by the Tircuit survey.

. The effect of moving Tract “A” ’s southern boundary from the Bayou Narcisse (YZ) northward to the so-called water line (QR.) has the effect of including land north of the Bayou in the 32 acres subsequently sold by Tract “B” and thus moving its eastern boundary (CD) westward from where it had been commonly regarded to be, and thus move the present boundary line (AB) also westward since there is a greater area or frontage of Tract “C” left to divide into half. Defendant LeBlanc, as present owner of Tract “A” which has always been described as containing 40 acres and which the mesne deeds describe as bounded south by the Bayou, also has an interest in resisting any redefining of the boundaries, which would reduce Tract “A”’s area from 40 to 36.80 acres; although this is not a question of this suit.

. And if so, they had according to the present record probably acquired title by thirty years’ adverse possession by the time of this suit.

. As was suggest id by the evidence, and as surveyors Waties and Kleinpeter noted, what was the “dry land” of Tract “A” varied after each rain and from season to season of the year, and from year to year over the years, and as matter of common parlance could possibly include, for instance, all that land north of the permanent course of the coulee, or that never at all flooded, or that which did not happen to be flooded at the time of the 1908 sale (as to which, of course, there is no evidence), etc.
Untroubled by such questions, Surveyor Woods testified positively that the term “meant the high land that you were able to work, that’s what it really meant” (Tr.-22), and proceeded to determine “the line between the dry land and the swamp after an ordinary rain” (Tr-7), admitting however that “the dry line land is an arbitrary business that has a matter of judgment where you would establish it” (Tr-31) and that he could easily have established a line a foot higher and deprived defendant LeBlanc of a lot more acreage. (Tr-31.) His brother Tircuit agreed with him.

. For instance, the Woods survey moves the boundary (CD) between Tracts “B” and “C” over 70' west of the fence presently regarded as situated on the line, and the Woods line (CD) runs through the front yard just 15' east of the rural residence there situated on Tract “B”.

. This is the red pencilled line marked “1” on the Waties survey introduced as P-9. It does not appear on the photostatic copy of the same survey introduced as D-l.
It is of some interest that the Klein-peter survey (D-3), which alone mathematically calculated Tract “B” as to have an exact acreage south of the bayou of 32 acres per the initial title deed, found that ideally its southeast corner (i. e., also the southwest corner of Tract “C”) should be 1034.18' east of the quarter-section’s SW corner, or just 9' west of where the heirs had informally calculated ended the frontage of Tract “B” containing 32 acres of varying depth because of the meandering course of the bayou. Both this line established by Kleinpeter and the line established by the 1942 deed are slightly (13-22') east of the start of the bounding fence along CD, which fence however (due to its slight northeasterly angle from the road) crosses back slightly into Tract “G” further north. We are of course not here concerned with fixing any boundary between Tracts “B” and “C”, and these slight deviations, while possibly worthy of note as corroborative or not of the result reached herein, are not materially significant.